### SCHOOL DISTRICT No. 17, CHASE COUNTY, v. N. J. SWAYZE.

1. SCHOOL-DISTRICT ORDER, *Prima Facie Valid.* A school-district order in the following form, and shown to have been signed by the school-district director and the school-district clerk, is *prima facie* valid, and *prima facie* evidence of indebtedness of the school district to the payee thereof, to wit:

"No. 74.                                    ELK, KANSAS, May 31, 1879.
    *Treasurer of School District No. 17, County of Chase, Kansas:* Pay to N. J. Swayze the sum of forty-seven dollars, for school apparatus, out of any funds in your possession, raised or appropriated for such purpose.
                (Signed)      W. G. HUNNEWELL, *District Clerk.*
    (Countersigned)      J. G. JOHNSON, *Director.*"

2. TRANSACTION, *Not Illegal.* Where a school-district board in 1878 pur-
chased a mathematical chart, and such chart is such an instrument as
might be considered both as an appendage and as apparatus, *held,* that
the transaction was not illegal and void.

3. RATIFICATION *of Irregular Acts.* The electors of a school district may,
at a regular meeting of the school district, ratify and approve what was
irregularly done by the school-district board or by the officers of the
district, so as to make their acts valid: *Provided,* There is nothing else
to make them invalid except that they were merely irregular.

*Error from Chase District Court.*

ACTION by *Swayze* against *School District No. 17,* Chase
county, to recover upon a certain school-district order.
Trial at the May Term, 1881, of the district court, and judg-
ment for plaintiff. The defendant brings the case here. The
opinion contains a sufficient statement of the facts.

*Peyton, Sanders & Peyton,* for plaintiff in error.

*Sterry & Sedgwick,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by N. J.
Swayze against School District No. 17, Chase county, Kansas,
to recover on the following instrument in writing, to wit:

"No. 74.                    ELK, KANSAS, May 31, 1879.

*Treasurer of School District No. 17, County of Chase, Kan-
sas:* Pay to N. J. Swayze the sum of forty-seven dollars, for
school apparatus, out of any funds in your possession, raised
or appropriated for such purpose.

(Signed)          W. G. HUNNEWELL, *District Clerk.*
(Countersigned)   J. G. JOHNSON, *Director.*"

And the following is a copy of the indorsement upon the
foregoing order:

"N. J. Swayze. Sept. 26th, 1879, presented for payment
by J. S. Doolittle, [to] treasurer of Chase county. I hereby
refuse to pay within order.— D. MAY, *Treasurer Dis. No. 17.*"

A judgment was rendered in the court below in favor of
the plaintiff and against the defendant for the amount claimed,
and the defendant, as plaintiff in error, now complains of such

judgment. The alleged errors are principally with reference to instructions given by the court to the jury, and instructions refused. The court below instructed the jury, among other things, that the instrument sued on was *prima facie* valid and binding upon the school district, and that it alone made out a *prima facie* case in favor of the plaintiff and against the school district. The court also gave the following instructions, among others, to wit:

"7. Where an order given by and signed by the director and clerk of a school district shows upon its face that it was given for school apparatus, the law presumes that it was given for a good consideration and was lawfully issued, and the burden would be on the district in such a case to show any facts overcoming such presumption, and it would not be sufficient in such a case to merely show that the district did not get and not receive such apparatus, as they may have contracted to pay in advance, or the property may have been tendered and left for them."

"9. If, after the order sued on was issued and delivered to the plaintiff, the school district at a meeting learned that the old order had been surrendered and a new one given, and such meeting with such knowledge took no steps in the way of disapproving such action and in the way of tendering back the old warrant to the plaintiff, then and in such case the jury may find, if the evidence warrants it, that there was a ratification by the meeting of the action of the board which would place the order in the same situation as though previously authorized."

The court refused to give the following instructions, to wit:

"1. If you find that a warrant had been given in the first place to some person other than the plaintiff, for a mathematical chart for said school district, and that that other person assigned it to the plaintiff, that warrant was void and without consideration, for the district had no legal authority to buy and pay for such chart out of the district money.

"2. And in such case, if the order sued on was given in lieu of the first-named one, it was equally void and without consideration."

It appears from the evidence that about the fore part of the year 1878, the school board of the present school district issued an order on their treasurer to some person, for the sum of

forty-seven dollars.   This "some person" assigned the order to the present plaintiff, N. J. Swayze.   The school district failed to pay this order, and afterward the director and clerk in lieu thereof issued the order now sued on, each signing the same at a separate time and place.   One witness, S. N. Wood, testified on the trial that " at a regular meeting of the voters of the school district, held after this new order was given, the action of the clerk and director in giving such order was ratified and approved."   The original order was probably given for a mathematical chart, though whether such was the consideration for the original order is not quite clear.   There was some evidence introduced tending to show that the chart was never delivered to the district, and the only evidence introduced tending to show that it was delivered was the action of the officers of the district in issuing said orders and the action of the voters of the district in ratifying and approving the same.   There was no evidence introduced tending to show that the chart was not tendered to the district, and there was no evidence introduced tending to show when the chart was to be delivered.   Upon the evidence in the case and the instructions of the court below, the plaintiff in error, defendant below, raises the following questions : First, was the order sued on *prima facie* valid and binding upon the district?   Second, included in the foregoing question is this other question : Had the school district power in 1878 to purchase in any manner school apparatus of any kind for the district?   Third, and included in the first question is this further question : If the school district had power, under any circumstances and in any mode, to purchase school apparatus of any kind, then does the order signed by the school-district director and the school-district clerk prove *primâ facie* that the apparatus purchased was of that kind of apparatus which the school district had power to purchase, and that it was purchased in the mode authorized by statute ? Fourth, had the school district power in 1878 to purchase a mathematical chart for the district?   Fifth, and was such chart purchased in the manner authorized by statute ?  Sixth,

was the order sued on issued in the manner provided by statute? Seventh, and if there were any irregularities intervening from the time of purchasing said chart down to the time of issuing the second order, did the school district ratify and approve what had been irregularly done, so as to make the order sued on valid and binding upon the school district?

The school order sued on seems to have been drawn up in proper form; and § 7, article 4, of the school law of 1876, (ch. 122, Laws of 1876; ch. 92, Laws of 1879,) provides as follows:

"SEC. 7. The clerk of the district shall draw orders on the treasurer of the district for moneys in the hands of such treasurer, which have been apportioned to or raised by the district to be applied to the payment of teachers' wages, and apply such money to the payment of the wages of such teachers as shall have been employed by the district board; and said clerk shall draw orders on the said treasurer for moneys in the hands of such treasurer, to be disbursed for any other purpose ordered by a district meeting or by the district board, agreeably to the provisions of this act."

And § 4 of the same article provides as follows:

"SEC. 4. The director of each district shall preside at all district meetings, and shall sign all orders drawn by the clerk, authorized by a district meeting or by the district board, upon the treasurer of the district, for moneys collected or received by him to be disbursed therein."

From 1868 down to 1876, a school district impliedly had the power to purchase and "to furnish a school house with blackboards, outline maps, and *apparatus* necessary for illustrating the principles of science." (Gen. Stat. 1868, ch. 92, art. 3, § 19, subdiv. 8.) But in 1876, when all the school laws of the state were revised, this provision was left out, and whether it was repealed or not, may be questioned. Counsel for both parties in this case seem to admit that it was repealed; and counsel for plaintiff in error, defendant below, make a strong and able argument to show that it was repealed. It was not, however, repealed expressly; but it is argued by counsel that it was repealed impliedly, although it is admitted by them

that repeals by implication are generally not favored. It is claimed to be repealed, principally upon the ground that the act of 1876, with § 11, article 3, thereof, is a complete substitute not only for said provision, but for all previous laws upon the general subject of schools. Now supposing that said provision was repealed by the act of 1876, then was there any power given by such last-mentioned act to school districts, to purchase in any manner school apparatus of any kind? Section 22, article 4, of the act of 1876, provides among other things that the district board shall "appoint some suitable person to act as librarian, and to take charge of the *school apparatus* belonging to the district." Section 27 of the same article provides that the district board shall visit the schools, and among other things inquire into matters touching the school "*apparatus*," etc.; and § 28 of the same article also seems to contemplate that each school district shall have "school apparatus." These sections all use the word "apparatus," along with some other qualifying words. There is no power, however, given by the school laws of 1876 to school districts, to purchase in any manner apparatus of any kind, unless such power is given by virtue of the provisions of § 11, article 3, and § 25, article 4, of such school laws, which provide, among other things, for the voting of taxes for and the purchasing of "appendages." Said § 11 provides, among other things, that a tax shall be annually voted to build, hire or purchase a school house, and "to keep in repair and furnish the same with the necessary fuel and *appendages;*" and said § 25 provides, among other things, that "the district *board* shall provide the necessary *appendages* for the school house during the time a school is taught therein."

Now it is certain that all kinds of school apparatus are not included among the articles properly denominated "appendages;" but we think it is equally certain that some kinds of school apparatus may be denominated "appendages;" for instance, we would think that backboards, outline maps and mathematical charts, to be hung upon the walls of the school house and to remain there permanently for the purpose of

illustrating such lessons in science, history or geography as might be taught in the schools, might properly be denominated both "school apparatus" and "appendages." A mathematical chart might be hung upon the walls of the school house and become an appendage; and it might also be used for the purpose of illustrating the science of mathematics, and thereby become a part of the apparatus used by the school. If this is correct, then the school district would have power, under §11, art. 3 of the school laws of 1876, to vote a tax to purchase a mathematical chart; and the school board, under §25, art. 4 of such school laws, would have power to purchase the same, and the school-district director and clerk would have power under said §§4 and 7, article 4 of said laws, to issue an order on the treasurer to pay for such chart; and all this would be done upon the theory that such chart would be a part of the appendages and apparatus of the school district; and such an order so drawn we think would be *prima facie* valid and binding upon the district. It is generally presumed, in the absence of proof to the contrary, that all officers, and indeed all persons, do their duty. In the absence of proof to the contrary, it must be presumed that the director and the clerk of School District No. 17 simply did their duty in drawing and issuing the order sued on in the present case. In the absence of proof to the contrary, it must be presumed that the electors of the district at every annual meeting voted all the taxes required by law to be voted at such meetings, and that the school board purchased some kind of apparatus which was necessary and proper for the school district to have, and some kind of apparatus which it was legal for the board to purchase, and that the order sued on was given in payment for such apparatus. The evidence in controversy, outside of the order itself, tends to show that the apparatus for which it was given was a mathematical chart. Now it is possible, and even probable, that this mathematical chart was in fact worthless; but as there was no evidence showing that it was worthless, it must be presumed that it had some value, and that it was worth the amount which

the school board agreed to pay for it.   If there were any ir-
regularities in the drawing of the order sued on, we would
still think that the order would not be invalid, for it would
seem that the order was ratified and approved by the school
district, at a regular school-district meeting.

Under the circumstances of this case, we cannot say that
any material error was committed by the court below, and
therefore its judgment must be affirmed.

All the Justices concurring.