(December 26, 1902.)

## WORK BROS. v. KINNEY.

[71 Pac. 477.]

SHERIFF—OFFICIAL BOND—LIABILITY OF SURETIES.—The sureties upon the official bond of a sheriff executed to secure the faithful performance of his duties during one term of office are not liable for the delinquencies and defalcations of such sheriff during a former term of office.

SAME—ESTOPPEL.—A sheriff seized goods under attachment during one term of office, and he and the sureties on his official bond were sued by the attaching creditors, who alleged that said sheriff wrongfully sold such attached goods and converted the proceeds of the sale thereof to his own use and advantage, and in such action judgment was rendered in favor of the attaching creditors and against said sheriff and sureties; the sheriff was elected to succeed himself, and afterward gave another official bond; the attaching creditors sued the sheriff and his sureties on the latter bond, for the same cause of action. *Held,* that the attaching creditors, by reason of their former action, and adjudication therein, are estopped from suing for the conversion of such attached goods on the last bond.

EVIDENCE—OPINION OF APPELLATE COURT—ADMISSIBILITY.—The opinion of the appellate court is not admissible in evidence to prove facts in issue in an action.

EVIDENCE—DECLARATIONS AGAINST INTEREST.—The acts and declarations of parties against their own interest, whether made in, or out of court, are admissible against them; those which are self-serving, or in the interest of the parties making them, are not admissible.

(Syllabus by the court.)

Appeal from District Court, Blaine County.

The facts are stated in the opinion.

F. E. Ensign and Kingsbury & Kingsbury, for Appellants.

The law of this case is summed up by Chief Justice Taney in *Bruce v. United States*, 17 How. 437, 15 L. ed. 127, and in these words: "When Bruce received his second commission, if any money or property which he received during his former term of office still remained in his hands, he was bound to apply and account for it under the appointment which he then received. . . . . It was so much money in his hands to be disbursed and applied under his second appointment." In the case at bar, not only was there no evidence against the legal presumption that the sheriff was holding the money to be paid over to the party entitled to it at the time he entered upon his second term, but the evidence showed official acts in the way of answers, declarations and returns by the sheriff which estopped him and his sureties to deny the fact. (*Boone County v. Jones*, 54 Iowa, 699, 37 Am. Rep. 229, 2 N. W. 987, 7 N. W. 155; *Baker v. Preston*, 1 Gilm. 235; *State v. Grammar*, 29 Ind. 530; *Morley v. Town of Metamoria*, 78 Ill. 394, 20 Am. Rep. 266; *City of Chicago v. Gage*, 95 Ill. 593, 35 Am. Rep. 182; *Ingram v. McCombs*, 17 Mo. 558; *Watts v. Colquit*, 66 Ga. 492; *State v. Paul*, 21 Mo. 51; *State v. McCormick*, 50 Mo. 568; *State v. Moses*, 18 S. C. 366.) A clerk of court neglecting to deposit his official moneys in the bank, as required by law, or to pay out in proper cases under orders of the court, is guilty of a continuing default, for which (without demand by the parties in interest) he and the sureties on his second and additional official bond are liable, although the moneys were received before the execution of such bond." (Murfree on Sheriffs, sec. 943.) "The liability of a surety on the official bond of the sheriff is dependent, not on the time when the fund which formed the subject of the default came to the hands of the principal, but upon the time when the default itself occurred." (*Yoakley v. King*, 10 Lea (Tenn.), 67; *State v. Wall*, 9 N. C. 20; *Wentz v. Ledoux*, 24 La. Ann. 131; Murfree on Official

Bonds, sec. 219; *Bruce v. United States,* 17 How. 437, 443, 4
Myer's Fed. Dec., sec. 522; *Kelly v. State,* 25 Ohio St. 567.)
The case at bar is one of those that sometimes reach the su-
preme court, which never ought to, from the fact that the trial
court should not have allowed it. The jury should have been
plainly told what their verdict must be, or the verdict should
have been at once set aside, and judgment ordered by the court.
There was not a particle of evidence that tended to show that
the plaintiffs were not entitled to recover, while there was an
abundance of evidence to show plaintiffs were entitled to recover.
When, under the evidence, there is no issue of fact for the jury to
find, the case need not be submitted to them. (*Work Bros. & Co.
v. Kinney,* 7 Idaho, 460, 63 Pac. 596; *Coffin v. Hutchinson,* 22
Or. 554, 30 Pac. 424; *Gwin v. Gwin,* 5 Idaho, 271, 48 Pac. 295;
*Arimjo v. New Mexico etc. Co.,* 3 N. Mex. 427, 5 Pac. 710;
*Martin v. Ward,* 69 Cal. 129, 10 Pac. 276; *McCormick v.
Holmes,* 41 Kan. 265, 21 Pac. 108; *Clancy v. Reis,* 5 Wash.
371, 31 Pac. 971; *Gildusleeve v. Atkinson,* 6 N. Mex. 250, 27
Pac. 477; *Commissioners etc. v. Clark,* 94 U. S. 278, 24 L. ed.
59; *Corning v. Troy Factory,* 44 N. Y. 577; *Nichols v. Gold-
smith,* 7 Wend. 160; *Grand Trunk Ry. Co. v. Nichol,* 18 Mich.
170; *Story v. Brennan,* 15 N. Y. 524, 69 Am. Dec. 629.)

Lyttleton Price, for Respondents.

Upon the question of the plea of estoppel, the offhand way
in which counsel disposes of it has induced its examination
many times to try and find whether the stupidity was in the
argument or in me in not being able to see the difference in
the two actions, which counsel attempts to point out. In the
light of the former opinions of this court, the argument referred
to is astonishing. They deal with every fact involved here:
the wrongful sale of all the goods; the conversion and the time
of it; the return of the execution *nulla bona,* and the date of it;
and every conceivable thing which in this case the court would
have to consider and find to grant him the relief asked for.
If this court were to give him the decision he asks, wherein
would its opinion be changed in any particular from the opinion
in the other case, except to say that the wrongful conversion

was in 1889 instead of 1888, as heretofore decided? The estoppel rests upon the fact that plaintiffs pleaded and proved and recovered upon the same misconduct charged here, but committed at a different date from that which they seek to establish to enable them to recover here. The court will not overlook the fact that Kinney is defendant in both cases. Of course, if they are not entitled to judgment against Kinney in both, they are not entitled to judgment against his sureties in both. If the estoppel is good as to Kinney, it is equally good as to his sureties. Would it not be competent and a perfect estoppel for Kinney to declare: You recovered from me once on this transaction on identically the same allegations and proofs of my acts you accuse me of here. You said then I committed them in 1888. You cannot be heard to deny that my offense was committed in 1888, nor permitted to assert that it was in fact committed in 1889, or any other year than 1888, for the purpose of pursuing me to another judgment for the same misdoing.

QUARLES, C. J.—This action was commenced on the 13th of February, 1891, against P. H. Kinney, sheriff of Alturas county, and fourteen sureties on an official bond given by him as such sheriff on the sixteenth day of January, 1899. A number of the sureties died during the pendency of the action, and for this reason, and other causes, the action was dismissed as to all of such sureties except the respondents S. J. Friedman, Charles Knaupp, John Murphy, C. J. Johnson, Charles J. Sherry, and Frank C. Coolidge. The plaintiffs, who are partners and merchants, had, prior to February 9, 1888, sold merchandise to one Warren P. Callaghan. The latter being indebted to them, they commenced an action in the district court, Alturas county, on the ninth day of February, 1888, to recover the sum of $1,685, with interest thereon, from said Callaghan, and in said action sued out and obtained a writ of attachment to secure said amount, and placed said attachment in the hands of the respondent Kinney, as such sheriff. Acting under said attachment, said Kinney, as such sheriff, seized and levied upon a stock of merchandise of the value of over $4,000, and afterward, without execution or due authority, sold said mer-

chandise, leaving sufficient in his hands to satisfy the debt of the appellants. On the second day of October, 1889, the appellants obtained judgment against said Callaghan for their said debt and interest, and obtained an execution, and placed the same in the hands of said sheriff, who afterward returned the same "No property found." Said Kinney executed the bond sued on as sheriff for a term of office commencing the second Monday of January, 1889, and ending the second Monday of January, 1891. He had been sheriff of said county for the two preceding years, and had executed a bond, with sureties, for said two preceding years. The real defense pleaded in the answer is one of estoppel. The complaint in this action alleges: "9. On information and belief, that on or about the first day of April, 1888, the said Kinney, as such sheriff, had and held in his possession, taken and attached by virtue of said writ of attachment, personal property belonging to said Callaghan not exempt from execution, and not encumbered by any lien prior to the lien of said attachment, of great value, to wit, of the value of $4,000; and that afterward, to wit, about the first day of May, 1888, said Kinney, as such sheriff, sold and disposed of the said personal property of said Callaghan for about the sum of $2,000, and that the said Kinney kept and retained the proceeds of such sale until after the fourth day of October, 1889, when he, as such sheriff, wrongfully converted the proceeds of such sale to his own use, and has wholly and wrongfully refused, and now refuses, to apply the proceeds of such sale, or any part thereof, to the satisfaction of said judgment or writ of execution, and that no part of said judgment has been paid." The answer traverses some of the allegations of the complaint, and then alleges as follows: "And these defendants allege that since the commencement of this action and since the filing of their several answers herein the plaintiffs herein have recovered a judgment in this court against the defendant Kinney, sheriff, etc., and certain sureties on his official bond as sheriff, etc., for the same cause of action as is alleged and set forth in the complaint herein; which judgment is of record in this court. That the plaintiffs have refrained from and refused to enforce said judgment against any of the

judgment debtors in said judgment, and have not sought in good faith to collect said judgment, or any part thereof. That heretofore, to wit, on the fifteenth day of February, 1890, the plaintiffs herein commenced an action against the defendant P. H. Kinney and certain sureties on the official bond of said Kinney as sheriff for the term ending with the end of the year 1888, in which said plaintiffs filed a complaint, verified and sworn to by S. B. Kingsbury, as their attorney, in which, among other things, they alleged as follows: That on or about April 1, 1888, the said Kinney, as such sheriff, had and held in his possession, taken and attached by virtue of said writ of attachment, personal property of said Callaghan not exempt from execution, and not encumbered by any lien other than the lien of said attachment, of great value, to wit, of the value of $4,-000, and that afterward, and on or about May 1, 1888, said Kinney wrongfully sold and disposed of and converted said property to his own use, and did not hold said property under said writ of attachment in order to satisfy said claim and judgment; but converted the same to his own use, and wrongfully used and converted the proceeds of said sale to his own use and advantage, to the great damage of the plaintiffs, to wit, to their damage $4,000. That in said action they took a judgment in accordance with the allegations in said paragraph 9 of said complaint, and these defendants allege that the plaintiffs in this action are, and ought of right to be, estopped from asserting, or pretending, or claiming, or giving any evidence to the contrary to the facts as in said paragraph 9 in said complaint set forth and contained. That the pretense and assertion that the defendant Kinney had money in his hands as sheriff at any time during the year 1889, is directly in contravention of the facts as stated in said paragraph 9 of said complaint, which the plaintiffs ought not to be heard to assert in this action."

It will thus be seen that the defense is that the conversion complained of in this action, the wrong and the tort, was committed in 1888, during a former term of the said sheriff, and that the appellants had alleged said facts in a suit against said sheriff and his sureties on his former bond, and that the appellants had obtained an adjudication of such facts, and should

not now be permitted to allege a different state of facts. It is difficult to conceive how said sheriff could, in 1888, "wrongfully use and convert" said attached goods to his own use, and wrongfully use and convert the proceeds of the sale thereof to his own use, and fail to keep said property under attachment to satisfy the appellants' claim, and then be guilty of converting the proceeds of such sales to his own use in 1899. If the allegations contained in the first suit against Kinney and his sureties on the bond given for 1887 and 1888 be true, we do not see how the sureties on the bond sued on can be held liable. The sureties on the bond sued on stand upon the conditions and terms of their bond. They did not undertake to answer for any wrongful acts of said sheriff in the past, but only for those in the future during the new term of office for which he was then qualifying. Having wrongfully sold the attached goods in 1888, and having converted the proceeds of such sale to his own use in May, 1888, we do not see how the sureties on the bond sued on can be held liable. But the able counsel for appellants insist with much learning, force, and eloquence that the sureties on the first bond were liable, because said sheriff sold without authority, and that the duty to hold the proceeds to satisfy any judgment recoverable against said Callaghan by appellants was a continuing one, and that until the judgment was obtained by appellants and an execution issued thereon and placed in said sheriff's hands he could not be charged with a violation of this continuing duty. In other words, that the sureties on the first bond were liable because he sold the attached goods without authority of law; the sureties on the last bond—the one sued on here—are liable because he did not continue to hold the moneys realized from said sale, and pay and apply same on the execution when it was placed in his hands. We do not see how there can be more than one conversion of the same goods by the same party. The sheriff, who is rightfully in possession of goods, having seized them under a writ of attachment, wrongfully sells them, and converts the proceeds of the sale of same "to his own use and advantage" in May, 1888. It seems enigmatical and paradoxical to say that he does the same thing in 1889. Having alleged these facts,

and by reason of such allegation and proof sustaining same, and having recovered a judgment against the sheriff and the sureties on his first bond, we think the defense of estoppel a good one, and that by their own acts, declarations, and conduct appellants should not now be heard to say that this wrongful conversion complained of did not take place in 1888, as alleged and proved in the first action, and there adjudicated. To our minds, this question of estoppel is conclusive of the present controversy. Having wrongfully sold the attached goods, as sheriff, in 1888, and having converted the proceeds of the sale of such goods "to his own use and advantage" in May, 1888, thus leaving nothing in his hands out of which to satisfy the execution in favor of appellants (afterward placed in his hands), the sureties on the bond sued on cannot be held liable for such wrongful conversion. The sureties here did not undertake to answer for any wrong committed by the sheriff under his former administration. We are unable to appreciate the fine, if not doubtful, distinction sought to be drawn by the able counsel for appellants between the present case and that brought by appellants upon the former bond upon this identical cause of action. To say that the sureties here are liable because the sheriff failed to continue to hold property, or the proceeds thereof, which he had converted during his prior term of office, would be tantamount to holding that the sureties on the bond sued on are liable, by reason of such bond, for the delinquencies and defalcations of said sheriff under his former term.

A careful scrutiny of the evidence convinces us that the sheriff did unquestionably convert the attached goods and proceeds thereof to his own use prior to the execution of the bond sued on in this action. It is true that under the law it was the duty of the sheriff to continue to hold such proceeds subject to the orders of the court, and the same should have been in his hands at the end of the first term and at the time of the execution of the bond sued on in this action; and, if this condition had existed, and the appellants had not estopped themselves, by reason of their allegations and proofs, and the adjudication brought about by them in said other action, the sureties here would undoubtedly be liable to the appellants in this action.

The question as to whether or not the conversion of the proceeds of the sale of said attached property was converted to his own use and advantage by said Sheriff Kinney before or after the execution of the bond sued on here was so clearly submitted to the jury for their determination by the instructions of the trial court that there can be no doubt that in finding for the defendants (respondents here) the jury found, and were justified in finding, that the proceeds of the sale of such attached property were converted by said sheriff to his own use and advantage in 1888, and that the same were not in his hands at any time after the execution of the bond sued on by the respondents. There is some conflict in the evidence, but we think the preponderance clearly against the appellants, and that upon the evidence this court should not be authorized in disturbing the verdict of the jury. As hereinbefore said, the declarations of the appellants in their complaint in said other action, and the judgment which they obtained therein against the sureties on the former bond, estops the appellants from taking a position in this case directly antagonistic to that taken in the former action. This question of estoppel conclusively precludes appellants from recovering upon the bond sued on here.

Appellants have assigned, in their brief and bill of exceptions, a great many errors, fifty in number, occurring during the trial of the cause in the district court. In our opinion, it would consume too much time and space to consider these assignments of error seriatim, and we think it unnecessary so to do. Many of the assignments of error relate to the introduction of evidence. A few general observations will suffice. Appellants objected at the trial to the introduction of the record in the former case. The acts and declarations of parties against their own interests, whether made in court or not, are admissible against them. Those which are self-serving or in the interest of the parties making them, are not admissible. The respondents introduced at the trial and were permitted to read a portion of the opinion of this court upon appeal in said former action. This was error. But we do not think that this error brought about the verdict complained of, and a careful study of the record convinces us that the verdict would not have been differ-

ent from what it was if the trial court had, as it should have done, excluded said opinion of this court. This error will not justify a reversal, in our opinion, as it did not affect the substantial rights of the appellants, who are estopped by reason of their acts and declarations in the action against the sureties on the former bond, as hereinbefore said and reiterated. We have carefully considered the record in this case, and have read and reread the able and very interesting brief of counsel for the appellants, and have considered with much interest all of the authorities cited on behalf of the appellants, and notwithstanding we see no good reason for reversing the judgment in this case. A review, in this opinion, of the authorities cited, many of which are not pertinent to the real merits of this case, we deem unnecessary.

For the foregoing reasons, the judgment is affirmed. Costs awarded to respondents.

Sullivan, J., concurs.

Stockslager, J., while sitting at the hearing, took no part in the decision.

### ON PETITION FOR REHEARING.

#### (February 9, 1903.)

SULLIVAN, C. J.—This is an application for a rehearing based on a printed petition containing one hundred and three pages. In the opinion, the main points involved in this controversy are stated, and it is not necessary to repeat them here. In the petition for a rehearing counsel first discuss writs of error at common law, appeals in suits of equity, and the nature of this appeal, and contend that this is an action at law, and presented on a bill of exceptions, and for that reason only errors of law can be considered on this appeal; that the only question presented for determination is, "Has any prejudicial error been committed, which was excepted to, and preserved by the record?" that this is not an appeal from an order refusing a new trial, and based upon a statement of the case, but is in the nature of a hearing on writ of error to the district court. The petition contains a very learned discussion of the questions above

indicated, and we fully agree with much of the argument and many of the points suggested. We admit that, if the record contains proper specifications of error, and the record shows that prejudicial error, based on such specifications, has been committed, the judgment must be reversed. It is conceded that this court decided three of the errors specified, and it is contended that, as there were fifty errors specified, there remain forty-seven not decided, and that it is absolutely necessary for the court to pass upon, in the written opinion, each of the errors specified. This contention is based upon the distinction drawn by counsel between appeals based on a bill of exceptions and those based on a statement of the case in an action at law. We cannot agree with counsel in his conclusion on that point. Section 3818 of the Revised Statutes provides, *inter alia,* as follows: "The decision of the court shall be given in writing; and in giving a decision, if a new trial is granted, the court shall pass upon and determine all of the questions of law involved in the case presented upon such appeal, and necessary to a final determination of the case." Those provisions apply to all appeals. whether based on bill of exceptions or statement of the case, both in actions at law and suits in equity. The distinction suggested by counsel between such appeals is not recognized by the provisions of said section, at least so far as to require a different decision in the one case than in the other. Neither on an appeal based on a bill of exceptions nor on a statement of the case do the provisions of said section of the statute require the court, in its decisions, to pass upon and determine all of the questions of law involved in the case, unless a new trial is granted. So, in this case, as a new trial was not granted, it was not necessary for the court to pass upon, in the written decision, each of the errors specified *seriatim.* The principal specification of error was that the verdict of the jury was not supported by the evidence. While it is true an exception to the verdict is saved by the statute, if the appellants, however, did not care to take advantage of that exception, they need not have done so. But they did, and argued it at considerable length, both in brief and oral argument, and the court decided it. In the decision of the case the court first considered the exceptions

to the introduction and rejection of testimony admitted, offered and rejected, as well as those taken to the modification, giving, and refusing to give certain instructions; and, after passing thereon, concluded that upon the pleadings and evidence the verdict must be sustained. That disposed of many of the errors specified; the main issue in the case being whether the money sued for in this action was in the hands of the sheriff at the time his second bond—the one sued on herein—was given; or, stated in another form, whether the misfeasance in office dereliction of duty, or conversion of the goods and proceeds occurred during his first term of office or during his second term. We have, no doubt, from the record before us, that it occurred during his first term, and that the evidence supports the verdict of the jury.

There was error in the admission of some testimony, and some in the rejection of testimony, but we do not think it was such error as to prejudice the substantial rights of the parties. That being true, under the provisions of section 4231 of the Revised Statutes, courts are admonished to disregard any error or defect in the proceedings which does not affect the substantial rights of the parties, and not to reverse any judgment because of such error or defect. The fifty errors specified may be classified as follows: One, that the court erred in permitting Mr. Price to act as attorney for the respondents; twenty-nine in regard to the admission and rejection of testimony; nineteen in regard to the modification, giving, and refusing to give certain instructions; and one as to the verdict not being supported by the evidence. The court examined each of said specifications, and while in several of them, we found error, we did not consider the errors sufficient to warrant a reversal of the judgment. The court concluded that the substantial rights of appellants had not been prejudiced by the errors committed. The court concluded that the verdict of the jury, had it been for the appellants, would not have been supported by the evidence if all of the evidence offered by them or in their behalf had been admitted, and that a verdict in favor of appellants should have been set aside, upon proper application. In that case it was not necessary to pass upon each and every of the specifications of

error in the written decision. That being the conclusion reached by the court, it did not matter whether errors had been made in the admission or rejection of testimony or in the modification, giving, or refusing to give certain instructions. For if, under the pleadings and proofs, taking into consideration all of the testimony offered by the appellants, that admitted as well as that rejected, the court had concluded that under the law and evidence the appellants were not entitled to a judgment, the judgment would not be reversed, even though the court had erred in many matters in the trial of said case.

After a most careful examination of the entire record before us, we are fully convinced that the dereliction of duty or misfeasance in office—the conversion of the goods or their proceeds—occurred prior to the time that these surety defendants and respondents became liable on the undertaking sued on, and that upon all of the testimony, both received and offered and rejected, and the law applicable to it and to the issues made by the pleadings, a judgment in favor of appellants should, on proper application, have been set aside, and not permitted to stand. Counsel for petitioners (appellants) admit that it is immaterial in this action how the sheriff got the money out of or for the Callaghan goods, or a part of them, but that, if he had it in his hands after these respondents became sureties for his official actions, they were liable. We concede that the main issue in this action is as to whether the sheriff had the money in his hands after these respondents became his sureties, and, as we conclude from the whole record that the verdict of the jury is supported by all of the evidence offered and received, including that offered by appellants and rejected by the court, and that a verdict in favor of appellants, based thereon, would not have been supported by such evidence, therefore no prejudicial error was committed; for, if the appellants would not have been entitled to a judgment upon any theory of the case, as presented by the record, they are not entitled to a reversal of the judgment.

Considerable criticism is made by learned counsel because of the use of the word "estoppel" in the original opinion; and we may concede that it might have been more correct to have used

the term "defense" or "plea in bar" to the cause of action set up in the complaint, than an estoppel in its technical meaning or sense. But that does not alter the merits of the case. The complaint alleged, in substance, the conversion of money, the proceeds of certain goods theretofore attached by the sheriff, which proceeds were alleged to have been in the hands of the sheriff at the time the respondents executed the bond sued on herein. The answer put that allegation in issue, and also set up the further defense that the plaintiffs had recovered a judgment for the same cause of action as alleged in the complaint in this action against the official sureties of said sheriff during his first term of office. The latter defense, if established, would be a complete defense to this cause of action; for, if the dereliction or misconduct of the sheriff occurred during his first term, his bondsmen for the second term would not be liable, unless they were his sureties on his first bond, which they were not. Section 4187 of the Revised Statutes provides that a defendant may set forth in his answer as many defenses as he may have.

The petition for a rehearing is denied.