(No. 7115.  October 12, 1943.)

L. E. HENDERSON, Respondent, v. ALLIS-CHALMERS MANUFACTURING COMPANY, a corporation, Appellant.

[149 Pac. (2d) 133.]

On Rehearing May 11, 1944.

Merrill & Merrill for appellant.

572

B. W. Davis for respondent.

GIVENS, J.—This action was brought by respondent, L. E. Henderson, under section 44-815, I. C. A.,[1] to recover from appellant, Allis-Chalmers Manufacturing Company, penalties and damages for failure to satisfy various chattel mortgages and conditional sales contracts.

Respondent, doing business as Henderson Equipment Company, was from January, 1932, to May, 1940, a dealer for appellant in Pocatello and adjacent counties, having the right to sell certain products manufactured by appellant. Respondent would purchase machinery from appellant for resale, in some cases giving a note secured by a chattel mortgage on the machinery furnished, and in some cases entering into conditional sales contracts. When resales were made and these mortgages and contracts paid, appellant would release them. When the agency of respondent was discontinued, it was discovered certain chattel mortgages and conditional sales contracts had not been released of record. Respondent, contending he had made demand for the release of these instruments and that appellant failed to deliver releases to respondent or satisfy the instruments of record, filed suit, asking $800 penalty provided by statute for failure to release four chattel mortgages and four conditional sales contracts, $10,000 general damages for injury to his credit rating and his good name as a dealer in farm implements, which prevented him from securing other agencies or dealers' contracts, as well as for humiliation and embarrassment, also, for $1600 attorney's fees, and for a decree of court directing satisfaction of said instruments. At the trial respondent confessed the motion for nonsuit on the causes of action covering the four con-

---

[1]"44-815. Refusal to satisfy mortgage—Penalty.—When any mortgage has been satisfied, the mortgagee or his assignee must immediately, on the demand of the mortgagor, execute, acknowledge, and deliver to him a certificate of the discharge thereof so as to entitle it to be recorded, or he must enter satisfaction or cause satisfaction of such mortgage to be entered of record; and any mortgagee, or assignee of such mortgagee, who refuses to execute, acknowledge, and deliver to the mortgagor, the certificate of discharge, or to enter satisfaction, or cause satisfaction of the mortgage to be entered, as provided in this chapter, is liable to the mortgagor or his grantee or heirs, for all damages which he or they may sustain by reason of such refusal, and shall also forfeit to him or them the sum of $100.00."

ditional sales contracts. The jury returned a verdict finding for respondent on the causes of action covering the four chattel mortgages, assessing his damages at $200 on each mortgage, and awarding $1500 damages on the cause of action asking for general damages, making a total verdict in favor of respondent of $2300. This appeal is from the judgment accordingly entered.

■ Appellant in effect raises five questions: first, the failure to specify the mortgages which respondent wanted released. The record shows that between thirty and forty mortgages had been given by respondent. All of these had been released except the four involved herein. The action herein originally involved four conditional sales contracts which were considered by respondent to fall within the category of chattel mortgages. They were not, however, so considered by the court, and upon appellant's motion were removed from the jury's consideration. The statute does not require a written request, and we believe a fair statement of the sufficiency of a notice under a statute like ours is contained in *International Harvester C. v. Simpson,* 222 Ala. 493, 133 So. 4, at 5, as follows:

"The right to recover is dependent upon the one question of whether the notice was sufficiently definite to point clearly to the requirement that the older mortgage or both of them were referred to. We may repeat here that this statute is highly penal and to be strictly construed so as to accomplish its legitimate purpose, and not as one of oppression to accomplish a purpose not intended. [citing authorities]

"A notice to the mortgagee by the mortgagor directing the satisfaction on the record of all recorded mortgages given by the mortgagor to the mortgagee, which have been paid, is sufficiently definite. [citing authorities]"

The cases cited by appellant in support of its contention in this regard concerned notices which were not as complete as the one herein, and it will be noticed that the record discloses that respondent testified he called upon different officers of appellant's company at different times asking that these mortgages be released, and at no time did they indicate that they did not know what mortgages he referred to, nor, though they contended releases had been sent him, did they at any time advise him that such was the situation, but their own testimony was to the effect that

they would look into the matter and let him know. In view of these circumstances we cannot say that, as a matter of law, the request was insufficient.

It it urged that even though the conditional sales contracts were removed from the jury's consideration, their baneful effect remained and requires a reversal. We do not believe the record justifies this conclusion.

Appellant also urges that a mortgagor has no right to bring a suit under the statute after he has disposed of the property but that the cause of action is then in the owner of the property. It will be noticed that our statute expressly gives the right of action to any mortgagor, *or* his grantee, *or* heirs. [emphasis ours] Appellant relies strongly upon the case of *Thomas v. Reynolds*, 29 Kan. 304, 32 P. St. Rep. 216, in support of its contention. As pointed out, however, in *Jones v. Fidelity Loan & Trust Co.*, 7 S. Dak. 122, 63 N. W. 553, the Kansas statute did not give the cause of action to anyone but the mortgagor. Our statute, therefore, clearly recognizes that this cause of action is not confined to the instant owner of the property. Two purposes are to be served by the statute: first, affecting the business standing and reputation of the person who gave the mortgage, and, second, title to the property. The first operates as to the person who gave the mortgage, hence, to give effect to the remedial feature of the statute, cause of action must exist in the mortgagor even though he has disposed of the property. (*Capps v. United States Bond & Mtg. Co.*, 274 Fed. 357.)

Appellant offered in evidence copies of letters which it contended had been sent from the local office in Pocatello to respondent containing releases. The stenographer in the office at Pocatello testified that it was the custom to send these letters and that the particular letters had been written by her and when sent were sent with releases. No copy of the releases was presented, nor was she able to testify as to the exact terms of the releases which she says were mailed with the letters, nor was other secondary proof as to the contents or terms of the releases offered. Upon objection by the respondent the letters were restrictively admitted under this instruction by the court:

"XII. You are instructed that defendant's exhibits seven, eleven and fifteen were admitted in evidence for limited purposes and you will recall that at the time of their ac-

ceptance you were instructed by the court that they were not to be considered by you at all as proving the delivery to the plaintiff of a duly acknowledged and certified satisfaction of any mortgage therein referred to; the same were admitted as evidence only for the purpose of being considered by you as impeachment of the testimony of the plaintiff."

Respondent denied that he had ever received releases and took the position that the releases had always been filed directly by appellant when the mortgages were paid. Respondent argues that the letters together with the testimony of the party who wrote them did not show that correct and valid releases were enclosed. It was, of course, incumbent upon the jury to find whether appellant's defense that valid releases had been sent and received was established. Appellant relies upon authorities to the effect that when the original is not produced the contents of a written document may be recited in evidence by a witness who may not distinctly remember the exact document. These authorities are insufficient, however, to justify the consideration of these letters as evidence that valid releases were therein contained. Secondary evidence of the terms of the releases of a more definite nature or copies of the releases should have been presented.

The last point urged by appellant is that the damages of $1500 were insufficiently proved. Respondent testified and offered evidence of other parties that because these chattel mortgages had not been released he failed to secure contracts of employment with other implement companies. There was no evidence, however, as to what these contracts of employment would reasonably or probably have been worth either at a fixed or definite salary or on a commission basis. Respondent argues that it is only when the cause of damages is uncertain that the element of damages may be uncertain. On the other hand, damages, in this instance, to the business reputation and standing of respondent must have some basis for computation by the jury, and neither it nor the court could take judicial notice of . what a contract of employment of this kind might be worth in the absence of any evidence along that line. The $1500 is more than mere nominal damage, which might be sustained on the ground that the jury was justified in concluding that the appellant had not released the mortgages. Therefore, there was not sufficient evidence to sustain the

$1500. (*Boise Street Car Co. v. Van Avery,* 61 Ida. 502, 103 P. (2d) 1107; 25 C. J. S. 816, sec. 162(2).)

The judgment must therefore be reversed and the cause remanded with instructions to grant a new trial.

Holden, C. J., and Dunlap, J., concur.

AILSHIE, J., (Concurring specially)—I concur in a reversal of the judgment as stated by Mr. Justice Givens. In view of the fact, that the case is to be retried, I refrain from expressing any opinion as to the weight of the evidence as it appears in the record.

The question as to the admissibility of certain exhibits will undoubtedly arise on retrial of the case. I think it necessary that the admissibility of these offered exhibits should be determined by this court for the benefit of the court on retrial. (Sec. 1-205, I. C. A.; *Work Bros. v. Kinney,* 8 Ida. 771, 781, 71 P. 477.)

I think exhibits 8, 9, 12, 13, 17, 18, and 19 were admissible, together with the testimony of the secretary and clerk who had kept the records and attended to the correspondence in the office of appellant. The weight and credence to be given such evidence is a question to be considered by the jury under proper instructions by the court. (See 1 Wigmore on Evidence, 2d ed., sec. 92; 2 Wigmore on Evidence, 2d ed., secs. 747, 748; see also *American Surety Co. v. Blake,* 54 Ida. 1, 27 P. (2d) 972; 91 A. L. R. 153.)

The court's instruction No. 12, to the effect that the jury was not to consider defendant's exhibits 7, 11, and 15, "as proving the delivery to the plaintiff of a duly acknowledged and certified satisfaction of any mortgage therein referred to," was erroneous. They were proper to be considered by the jury in connection with other evidence in determining the question as to whether or not appellant had ever furnished the release of the mortgage. (See 20 Am. Jur., sec. 1043, p. 81.)

BUDGE, J., (Concurring specially)—I concur with both Justice Givens and Justice Ailshie in reversing the judgment herein.

I do not think, however, that the trial court was correct in giving its instruction No. 12, restricting the admission

of exhibits 7, 11 and 15 only for the purpose of being considered by the jury as impeachment of the testimony of respondent. I am likewise of the opinion that the court erred in refusing to admit in evidence appellant's proffered exhibits 8, 9, 12, 13, 17, 18, and 19.

The testimony of the secretary and clerk, who kept the records and attended to the correspondence in appellant's office was properly admissible. The weight and credibility of her testimony and the weight and credibility of all exhibits above mentioned were for the jury under proper instructions. This testimony and these exhibits would throw light upon the numerous transactions carried on between appellant and respondent over a long period of time and the manner in which the chattel mortgages were handled, and thus, perhaps, aid the jury in determining whether or not the chattel mortgages herein involved were released upon proper demand.

## ON REHEARING

### (Filed May 11, 1944)

GIVENS, J.—■ Appellant and respondent both petitioned for a rehearing, which was granted, respondent seeking clarification of the opinion to the effect that the new trial be confined to the ninth cause of action, appellant that the new trial be on all five extant causes of action.

■ Appellant may not complain that at its insistence the trial court compelled respondent to segregate his suit into separate causes of action.

Appellant's objection to respondent's own testimony of the value of contracts of employment which he testified he was prevented from obtaining because these mortgages had not been released should not have been sustained.

Appellant's exception to the statement in the opinion that "As pointed out, however, in *Jones v. Fidelity Loan & Trust Co.*, 7 S. Dak. 122, 63 N. W. 553, the Kansas statute [construed and followed in *Thomas v. Reynolds,* 29 Kan. 304, 32 P. St. Rep. 216] did not give the cause of action to anyone but the mortgagor" is well taken, the Kansas statute being, in this particular, identical with ours. Section 44-815, I. C. A., does not indicate that the effect upon the mortgagor's credit is not encompassed within the purpose of the statute.

"The object of the statute is obvious. The record of the mortgage is constructive notice to the world of the existence of the debt and incumbrance. When this is paid, the statute has provided for satisfaction on the record, so that the world may also know the fact of payment. Unsatisfied mortgages of record tend to affect the pecuniary standing and credit of the mortgagor in business circles. In view of these considerations, the reasonableness of the statute requiring the mortgagee to acknowledge payment of the debt in as public a manner as the mortgagor had acknowledged its existence, is apparent." (*Deeter v. Crossley*, 26 Iowa 180.)

The above holding was approved in *Livingston v. Cudd*, 121 Ala. 316, 25 So. 805, amplifying the same by quoting with approval from *Gay v. Rogers*, 109 Ala. 624, 20 So. 37, as follows:

"When the lien or mortgage has been wholly or partially satisfied by payments, fairness and justice to him demand that his credit be restored. The mortgagee having published to the world the existence of his lien or claim, when it has been removed, he owes, independent of the statute, a moral duty to his debtor, to give the same publicity to the fact that the property of the debtor is no longer incumbered. The statute makes it a legal duty to perform a moral duty, and imposes a penalty if he fails to discharge this duty. (*Scott v. Field*, 75 Ala. 422.)"

The wording of the statute permitting a recovery by a mortgagor, his grantee, or heirs was to cover all possible contingencies and to authorize the recovery by any person who was injured in any particular by the failure to release the mortgage, thus covering not only the matter of the title, but also damages that might, as indicated in the cases above, be occasioned by injury to financial standing. Kansas has evidently adopted the narrower construction and confined recovery to the owner of the property who was injured by failure of the mortgagee to clear the title. The statute is salutary and designed to protect the mortgagor from the neglect of the mortgagee, who, after the mortgage is paid, has no more right or interest in the property and may not be particularly concerned with whether or not the title is cleared, and the legislature evidently considered the statute advisable protection. Hence, despite the misstatement as to the Kansas holding and our high regard

for that court, our former conclusion commends itself and prevails.

We adhere to our holding that the demand herein was sufficient to have its adequacy passed on by the jury.

Mrs. Carney, stenographer in appellant's Pocatello office, testified that according to custom she sent to the home office (where the mortgages were kept) requests for releases, illustrated by defendant's exhibit 9 for identification:

"SECURITY ORDER

Br. No.  A-798390              Name  L. E. Henderson
Branch  Pocatello             State or Province  Idaho
XX  Claim Paid.               Send out securities as
                              checked.

Deliver undersigned paper as checked.
—— Chattel Mortgage
—— Contract of Conditional Sale
—— Real Estate Mortgage
—— Trust Deed
—— Notes
——
XX  Release
—— Assignment To
Date  February 1, 1940          Signed  E. L. Bjornlie"
That pursuant thereto releases were returned with covering memoranda as exhibit 8 for identification:

"ALLIS-CHALMERS MANUFACTURING CO.
(Letter enclosing documents)
                              Milwaukee, Wis. 2-5-40
B. R. No.  798390              Name  L. E. Henderson
                    Pocatello Branch
Complying with yours of 2-1-40 We attach hereto the instruments checked below:
  x     Chattel Mortgage        ——  Notes No.
  ——    Real Estate Mortgage  ——  Contract of Con-
                                    ditional Sale
  ——    Trust Deed             ——
  x     Release                ——
  ——    Assignment to . . .    ——
. . . . . . . . . . . . . . . . . . . . .
                              M. Nicholas
Remarks: ................................................................................."

She testified that thereupon she enclosed these releases with letters (three copies of which were admitted as defendant's exhibits 7, 11, and 15) and mailed them to respondent.

The court sustained respondent's objections to the above inter-office requests and return memoranda, exhibits 8, 9, 12, 13, 16, 17, 18, 19, for identification, covering the four mortgages in question.

In enacting chapter 106, 1939 Session Laws, page 175,[1] the legislature apparently intended to broaden the scope of admissibility of records made in the regular course of business. (*Freeman v. Mutual Life Ins. Co. of New York*, 342 Pa. 404, 21 A. (2d) 81, 135 A. L. R. 1249; *Skoller v. Short*, 35 N. Y. S. (2d) 68; *Reed v. Order of United Commercial Travelers*, 123 F. (2d) 252; *Cottrell v. Prudential Ins. Co. of America*, 23 N. Y. S. (2d) 335; 120 A. L. R. 1133.

The statute under which respondent sues is penal and to be strictly construed. (*Harding v. Home Investment etc. Co.*, 49 Ida. 64, 286 P. 920.)

While the issue of whether valid releases were sent was clearly before the jury and the jury by general verdict may have determined either that no releases were sent or that invalid releases were sent, we cannot say the rejection of these memoranda and their consequent non-consideration by the jury may not have affected the result prejudicially

---

[1]"Section 1. DEFINITION. The term 'business' shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not.

"Section 2. BUSINESS RECORDS. A record of an Act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to the identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

"Section 3. UNIFORMITY OF INTERPRETATION. This Act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

"Section 4. SHORT TITLE. This Act may be cited as the Uniform Business Records as Evidence Act.

"Section 5. REPEAL. All acts or parts of acts which are inconsistent with the provisions of this Act are hereby repealed."

to appellant. Therefore, these memoranda should have been admitted, limited, like the copies of the letters, by instruction 12, supra.

The rejected exhibits concern the first four causes of action, recovery on which is, of course, a condition precedent to recovery on the ninth. A new trial should be granted on all five causes of action.

HOLDEN, C. J., (Dissenting and concurring.)—Since the rehearing of this cause, have carefully and fully reexamined the record and the cases relied upon by the respective parties, and have reached the conclusion: first, that the trial court should be directed to enter judgment in favor of respondent and against appellant on the verdict of the jury on respondent's first four causes of action. Second, that judgment on respondent's ninth cause of action should be reversed and a new trial granted as to that cause of action, and further and as to that cause of action respondent is entitled to recover whatever damages he can prove by competent evidence he actually suffered. Third, the trial court erred in sustaining appellant's objection to respondent's testimony as to the value of the contracts of employment, which he (respondent) testified he was prevented from obtaining, because the chattel mortgages had not been released.

Dunlap, Justice, has requested me to state that he concurs in the conclusions herein expressed.

AILSHIE, J.—I still adhere to the views expressed by me on the original hearing. I accordingly concur in reversing the judgment.

I am unable, however, to agree with Mr. Justice Givens in his construction of the provisions of sec. 44-815, I. C. A. I think the right of action, for damages and penalty, accrues only to the holder of the legal title at the time the demand for satisfaction of mortgage is made, whether that be the *mortgagor, his grantee, or his heirs.*

Our statute (sec. 44-815) is in every substantial respect the same as the Kansas statute, which was under construction in *Thomas v. Reynolds,* 29 Kan. 216, 219, 32 P. Sts. Rep., with the single exception that their statute limited the recovery to $100; whereas, our statute extends the right

of recovery to "all damages which he or they may sustain by reason of such refusal, and shall also forfeit to him or them the sum of $100.00." In *Thomas v. Reynolds, supra,* Mr. Justice Brewer, subsequently a Justice of the Supreme Court of the United States, made the following comment on the Kansas statute:

"By this it appears that the penalty goes to the mortgagor, or his grantee or heirs. It could not go to the grantee if it was a purely personal right of the mortgagor, and was not a right running with the land. If it is a right running with the land, the purpose of the statute is obviously a protection to the land, and not the securing of a personal right of the mortgagor. In other words, the purpose of the statute is, as claimed by counsel for plaintiffs in error, to remove all clouds from the title of real estate, and not simply to furnish record evidence of the mortgagor's solvency, by proof that he had paid the particular debt secured."

The reasoning of Justice Brewer seems to me to be clear, logical and sound and a very reasonable construction of the statute.

On the other hand, it seems to me that the reasoning of the Alabama court, in *Gay v. Rogers,* cited by Mr. Justice Givens, both unsound and illogical. As illustration, they say: (20 So. 37, 40)

"There is no law which requires a mortgagee to have his mortgage recorded. . . The mortgagee having published to the world the existence of his lien or claim, . . . owes, independent of the statute, a moral duty to his debtor, to give the same publicity to the fact, that the property of the debtor is no longer incumbered."

Whatever the Alabama statute may be, with reference to *recording* mortgages, it is made the specific duty, by the Idaho statute (sec. 9-101, I. C. A.), for a mortgagee to record his mortgage, in order to protect his lien against strangers and third parties. (*Farm Credit Corp. v. Rigby Natl. Bank,* 49 Ida. 444, 449, 290 P. 211; *Jeppesen v. Rexburg State Bank,* 57 Ida. 94, 99, 62 P. (2d) 1369. Moreover, it seems clear to me that, under our statute, the right of action for damages, for failure to release a satisfied mortgage, *runs with the land.* In other words, the holder of the legal title, *at the time the demand for cancellation of the mortgage is made,* is the one to whom the right of action arises. (14 C. J. S., p. 998, sec. 350.)

The case of *Deeter v. Crossley*, 26 Iowa 180, from which quotation is made, involved a statute limiting the right of recovery to *mortgagor* alone; hence, the discussion with reference to *grantees* and *heirs* can be of no assistance in construing a statute like ours. (See *Jones v. Fidelity L. & T. Co.*, 63 N. W. 553, 555.)

After the owner has sold and conveyed a tract of mortgaged land, it can make no material or substantial difference to him or affect his credit, whether the mortgage on the land is cancelled *after* he has sold and disposed of his interest in the land. The chances of a personal judgment ever being entered against him, on account of the indebtedness, is too remote and speculative to merit serious consideration or support an action for damages. (Chap. 150, p. 229, 1933 Session Laws; *Jeppesen v. Rexburg State Bank*, 57 Ida. 94, 62 P. (2d) 1369.) At any rate, the right of action is conferred by statute on the "mortgagor *or* his grantee, *or* heirs" and not to the "mortgagor" *and* his "grantee" *and* "heirs."

BUDGE, J., (Concurring specially.)—In addition to the brief observations contained in my special concurring opinion heretofore filed, and reaffirming the views therein expressed, it is my opinion, after a careful re-examination of the record and authorities cited, that under the provisions of Sec. 44-815, I. C. A., the mortgagor, respondent here, although he had disposed of the property covered by the mortgage, had the right under the statute to bring the present action against appellant. The burden of proof was upon respondent to establish by competent and substantial evidence (1) that the mortgages had been satisfied or paid; (2) that a proper demand had been made upon the mortgagee to execute, acknowledge and deliver certificates of discharge or satisfaction of said mortgages so as to entitle them to be recorded, or to otherwise discharge the mortgages as by the statute provided; and (3) that appellant had refused to comply with the provisions of the statute as above enumerated.

If appellant upon proper demand refused to release the mortgages in the manner provided by sec. 44-815, supra, under the facts and circumstances of this case, appellant became liable to respondent for all damages, if any, sustained by respondent as a result of such refusal, and also for the statutory penalty.

The purpose of the statute is plain. It mandatorily provides that the mortgagee or his assignee *must* immediately, on payment of the mortgage debt and upon proper demand, enter satisfaction or cause satisfaction of the mortgage to be entered of record in order that the records disclose that the lien created by the mortgage had been satisfied and the mortgage discharged of record. To construe the statute otherwise than as above indicated might seriously impair the credit of the mortgagor, and thus as alleged in the instant case result in damage to the mortgagor.

While the sufficiency of the demand for the release of the mortgages was somewhat indefinite and uncertain as to which particular mortgages respondent claimed had been satisfied, I am not constrained to hold the failure on the part of respondent to have more definitely and with greater certainty designated the particular mortgages not released as being fatal to his cause of action. It was the imperative duty of the appellant to release the mortgages on proper demand immediately following payment, or within a reasonable time thereafter.

I have advisedly refrained from citing authorities to support my conclusions, my associates having discussed the authorities which are in conflict.

In the state of the record, I am satisfied that the ends of justice will be served by the granting of a new trial upon all the issues raised by the pleadings.

PER CURIAM.—In view of the various and divergent opinions entertained by the Justices, the following judgment on this appeal is ordered;

■ The judgment is reversed and a new trial is granted in the first four causes of action and also in the ninth cause of action. Upon new trial, exhibits 8, 9, 12, 13, 16, 17, 18, and 19 should be admitted, as limited and restricted by instruction 12. The cause is remanded for further proceedings in accordance herewith. No costs awarded.