240 P.2d 242

In re POTLATCH FORESTS, Inc.

No. 7750.

Supreme Court of Idaho.

Feb. 5, 1952.

Elder, Elder & Smith, Coeur d'Alene, for Potlatch Forests, Inc.

THOMAS, Justice.

This is an appeal from findings, conclusions and ruling of the Industrial Accident Board, which reviewed and sustained a determination made by the Employment Security Agency under the Employment Security Law, Title 72, Chap. 13, I.C., determining the experience rating of Potlatch Forests, Inc., (hereinafter referred to as Potlatch) .for 1949, to be 1.5 percent.

It .is the contention of Potlatch that the experience rating was not determined by the Agency in accordance with the 1947 law, particularly what now appears to be Section 72–1351, I.C., and that the experience rating' should have been determined to be 1.1 percent under such statute.

As a historical background and to better understand both the primary question presented, as well as questions auxiliary thereto, it is deemed advisable to analyze briefly the pertinent provisions of the law as it existed prior to the amendment of 1947, as well as the pertinent provisions of the above designated Section of the 1947 law.

Beginning with the year 1939 and until the year 1943, there was no provision in the Employment Security Law for granting a reduced contribution rate based upon employment experience. During this period of time all employers were charged 2.7 percent without regard to the amount of benefit payments charged to their respective accounts. The Agency was not, during this ·period of time, concerned with the

Robert E. Smylie, Atty. Gen., John W. Gunn, Asst. Atty. Gen., and Sherman F. Furey, Jr., Salmon, for the Agency.

reasons and circumstances surrounding the separation of employees, particularly with reference as to whether or not such separation was because the employee had quit voluntarily without cause or had been discharged for cause.

From July 1943 to July 1946 the law provided that in the event an employee was separated from his *last* employer (we must bear in mind there is a distinction between *last* employer and *last base period* employer) under circumstances which made him eligible for .benefit payments, such payments were automatically charged against the account of the *last base period* employer, even though the employee had been separated from the employment of the last base period employer because he had been discharged for cause or had voluntarily quit without cause. Under the Act as it existed from 1943 to July 1946, an employee could have been discharged for misconduct or could have voluntarily quit his employment with his last base period employer without cause, and then have gone to work for another employer and if he was separated from the employment of the last employer, as distinguished from the last base period employer, for any reasons which would make him eligible for benefits, those benefit payments would have been charged against the account of the last base period employer and not the last employer, unless, of course, the last base period employer and the last employer were one and the same party.

In July 1946 the Agency, by regulation, provided that where an employee voluntarily quit his last base period employment without good cause or was discharged therefrom for cause, any benefits thereafter paid to such employee were not to be chargeable to the experience rating account of his last base period employer.

This brings us down to July 1, 1947 when the Act in question became effective, 1947 Session Laws, Chap. 269, Section 51(b), page 821. The pertinent provisions of said section, which is now Section 72–1351, I.C., are set forth as follows:

"(a) Subject to the provisions of sections 72–1349 and 72–1350, each eligible employer's contribution rate shall be determined in the manner set forth below for the period from July 1 to December 31, 1947, and for each calendar year thereafter:

"(1) If the excess of contributions over benefits paid on the employer's account since December 31, 1939, is not less than 5.5 per centum and not more than 8 per centum of the average annual payroll of the past preceding three years, the rate shall be 2.3 per centum.

"(2) If the excess of contributions over benefits paid on the employer's account since December 31, 1939, is not less than 8 per centum and not more than 10.5 per centum of the average annual payroll of the past preceding three years, the rate shall be 1.9 per centum.

"(3) If the excess of contributions over benefits paid on the employer's account

since December 31, 1939, is not less than 10.5 per centum and not more than 13 per centum of the average annual payroll of the past preceding three years, the rate shall be 1.5 per centum.

"(4) If the excess of contributions over benefits paid on the employer's account since December 31, 1939, is over 13 per centum of the average annual payroll of the past preceding three years, the rate shall be 1.1 per centum.

"(b) For experience rating purposes, benefits paid during any calendar year shall be charged to the account of the claimant's last covered employer during the base period; however, no charge shall be made to the account of such covered employer with respect to benefits paid under the following situations:

"(1) If paid to a worker who terminated his service for such covered employer voluntarily without good cause, or who had been discharged for misconduct in connection with such services; * * *."

It will be observed that the greater the spread between contributions made by the employer and the benefit payments made to employees and charged to his account, the lower the experience rate will be.

Potlatch contends its rate for 1949 should have been 1.1 percent and not 1.5 percent, because under the Act, Potlatch should not be charged for the purpose of determining its experience rate, and for no other purpose, with the benefit payments made to its employees who (a) volun-tarily quit their employment without good cause or (b) who were discharged for cause at any time after December 31, 1939. Potlatch does not contend that under the law as it then existed, it was not proper and correct to make those charges against its account at the time they were made, but only contends that for the purpose of determining its experience rate at any time after the effective date of the Act of 1947, those charges should have been deleted for the purpose of determining that rate, and for no other purpose.

The Agency, on the other hand, contends the Act of 1947 does not operate retroactively and even though an employee quit voluntarily without good cause or was discharged for cause from 1940 to July 1946, the employer still is not entitled to have the benefit payments so made charged off for experience rate purposes, because there was no provision for nonchargeability prior to July 1946 and that such benefit payments were automatically charged against the last base period employer without regard for the reason why the employment was terminated.

The Agency further contends it was not required to and did not keep any record with reference to the reasons for severance of employment as it was not required to have this information at any time prior to July 1, 1946, except insofar as the last base period employer and the last employer were one and the same employer; that

the Agency was not concerned with the reason for separation except the separation of the last employment and if such separation would make the employee eligible for benefit payments, such payments were automatically made and charged against the last base period employer.

The experience rating was set up to reward employers for efforts directed towards stabilizing employment by providing for reduced rates where the severance of employment was not occasioned by any arbitrary actions or fault of the employers.

While Potlatch had kept a record at all times since December 31, 1939, in which it had set forth the purported reasons for severance of employment and had on every occasion forwarded to the Agency a notice of separation of an employee and set forth thereon the purported reasons for such separation, yet the Agency contends it kept no such records for the reasons hereinbefore briefly set forth.

At this point it perhaps would be appropriate to state that Potlatch served a subpoena duces tecum upon the Director of the Agency to produce all of the records of charges of the Employment Security Agency against Potlatch for benefits paid from 1939 to 1948. These records were not produced and the evidence reveals they were not produced for the reason the Agency had destroyed such records and that before such destruction, had made microfilms of the benefit payment cards only, and the information on such microfilms was of no particular benefit with reference to the matter before the Board.

Potlatch then offered some 194 exhibits of its records dating back to 1939 showing, among other things, the purported reasons for separation of employment on the ground they were the best evidence obtainable and were admissible under the provisions of the Uniform Business Records as Evidence Act, Title 9, Chap. 4, Idaho Code. These exhibits were admitted conditionally and later, upon motion of attorney for the Agency, they were stricken.

It is further contended by the Agency that even though the interpretation placed upon the Act by Potlatch is correct and even though these particular exhibits were admissible and might have been properly used to initially determine the experience rating of Potlatch in 1947, yet Potlatch has lost its right to question the determination of its experience rate for 1949, because in 1947 it did not take advantage of the provisions of Section 72–1351(e) which in pertinent part provides as follows: "(e) Each employer shall be notified of his rate of contribution as determined for any calendar year pursuant to this section. Such determination shall become conclusive and binding upon the employer unless, within fourteen days after delivery or mailing of the notice thereof to his last known address, the employer files an

application for redetermination setting forth his reasons therefor. * * *"

And that the Agency in making the determination in 1947 necessarily considered the rights and facts now in issue and they then became final under the provisions of Section 72-1368(k) as follows: "(k) Any right, fact, or matter in issue, directly based upon or necessarily involved in a determination, redetermination, decision of the appeals examiner or decision of the board which has become final, shall be conclusive for all the purposes of this act as between the interested parties who had notice of such determination, redetermination or decision. Subject to appeal proceedings and judicial review by the Supreme Court as set forth in this section, any determination, redetermination or decision as to rights to benefits shall be conclusive for all purposes of this act and shall not be subject to collateral attack irrespective of notice."

To this contention Potlatch counters to the effect that when the first experience rate was established in 1947 for Potlatch by the Agency, the rate was established at 1.1 percent, which is the lowest possible rate provided for under the Act; that while Potlatch was notified of the establishment of such rate, it made no protest or objection to the rate because no lower rate could have been attained; that it was not prejudiced in any sense by the rate so established, and that it would have been an idle gesture for it to resist such rate. In the same connection, Potlatch pointed out to the Agency at the time the rate in 1947 was established, that there were certain erroneous charges contained in the compilation of charges by which the Agency had arrived at the rates for 1947 and again did the same for 1948, Exhibits 255, 256, 257 and 258; however, even though the Agency ignored the complaint with reference to such erroneous charges in 1947 the rate still could not exceed 1.1 per cent.

Potlatch made some five assignments of error to the effect the Board erred in making and entering its ruling of law that Potlatch's payroll records were incompetent, immaterial and irrelevant and hearsay; erred in holding the exhibits offered by Potlatch affecting events occurring prior to the year 1949 were not timely and, therefore, not admissible; that the Board erred in its order striking from the record the exhibits of Potlatch which had to do with chargeability questions; and in affirming the determination of the Agency fixing the experience rating of Potlatch at 1.5 percent for the year 1949.

The primary question at issue is whether or not under the Act the employer has a right to go back and have deleted for the purpose of arriving at its experience rate, and for no other purpose, all charges made against its account from 1940 to 1949, covering benefit payments made to employees who were discharged for cause or who voluntarily quit without cause. Also there

is, of course, the question of whether such right, if given under the Act, has been foreclosed by failure of Potlatch to file a petition to redetermine the 1947 rate within fourteen days after it received notice of the computation, as provided for in Section 72–1351(e), I.C.

We are confronted with the question of the construction of the statutes above set forth. Not always, but at times, the statutes themselves set forth a declaration of public policy which is helpful in arriving at legislative intent. Such is true of the particular act now under consideration. Section 72–1302, I.C., declares the public policy of the state under the act as follows: " * * * Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. *Involuntary* unemployment is therefore a subject of national and state interest and concern which requires appropriate action to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legisla-

ture, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the *benefits of persons unemployed through no fault of their own."* (Emphasis supplied.)

The declaration, as contained in the above section, indicates clearly the legislature was directing its efforts at involuntary unemployment, i. e., unemployment occasioned through no fault of the employee. This Court has said on at least two occasions this Act must be liberally construed to accomplish its purpose. Hagadone v. Kirkpatrick, 66 Idaho 55, 154 P.2d 181; Webster v. Potlatch Forests, Inc., 68 Idaho 1, 187 P.2d 527.

This is an act providing, among other things, for revenue or a tax; and it must be construed strictly in favor of the taxpayer. Idaho Gold Dredging Co. v. Balderston, 58 Idaho 692, 78 P.2d 105.

Section 72–1351, I.C., provides a formula or method by which the experience rating of an employer is to be determined subsequent to July 1, 1947. The formula for making that determination provides that if the excess of contributions over benefits paid on the employer's account since *December 31, 1939,* is over 13 percent of the average annual payroll of the last preceding three years, the rate shall

be 1.1 percent. There is no dispute in the record that the contributions made by Potlatch from December 31, 1939 to the year 1949 did exceed the benefit payments made on Potlatch's account for the same period by more than 13 percent of the average annual payroll for the past preceding three years, if no charge is made to the account of Potlatch with respect to benefits paid to employees who voluntarily quit such employment without cause or who were discharged for misconduct.

This statute, liberally construed to accomplish its declared purpose, clearly contemplates that such employer, for the purpose of determining his first experience rate in 1947 and at all times thereafter as long as such Act is effective, shall not be charged with benefit payments made to any of his employees who voluntarily quit without cause or who were discharged for cause at any time after December 31, 1939. While the charges were made against Potlatch's account during all times prior to the effective date of the 1947 Act and were proper charges to be made against the account, yet for the purpose of making the necessary computation to determine its experience rating—and for that purpose only—these charges should be deleted or disregarded.

■ While Potlatch did not, within fourteen days after it received notice from the Agency that the Agency had determined its rate of contributions for 1947 (the first experience rating under the Act) file an application for a redetermination of such rate as required by Section 72-1351(e), I.C., it did, however, call to the attention of the Agency that there were erroneous charges contained in the compilation of charges used in determining the rate in 1947 and protested such charges. Potlatch did not ask for a redetermination of the rate in 1947 because the rate determined by the Agency (1.1 percent) is the lowest rate permissible under the Act. The rate determined did not operate to the prejudice of appellant even though such erroneous charges were used in the computation thereof, and for that reason to have filed a petition for redetermination under the Act would have been a vain and idle act, not required by law. Because the erroneous charges, which were protested, were ignored and because the determination made in 1947 did not prejudice Potlatch, the determination is not conclusive, final and binding on Potlatch with reference to the appropriate rate to be determined for the year 1949.

■ This brings us to the contention that Potlatch's exhibits numbered one to 194, inclusive, were erroneously stricken. When an employee was separated from his employment with Potlatch, notice of such separation was mailed to the Agency upon a form or letter setting forth the reason for such separation. These reports were subpoenaed, but not produced because they had been destroyed by the Agency. Potlatch then produced and offered in evidence its own payroll records and copies of such

forms or letters covering the years from 1939 to 1948 inclusive (Ex. 1–194). These records reflected the reasons for such separation of each employee. They were conditionally admitted and at the conclusion of the hearing, upon motion of counsel for the Agency, they were stricken. The exhibits, as the evidence reveals, were properly identified and were prepared in the regular course of business, at or near the time of the separation of employment.

It is urged by Potlatch that by the enactment of the Uniform Business Records as Evidence Act, supra, the admissibility of records made in the regular course of business has been broadened in scope and that such exhibits were, upon proper showing, admissible. On the other hand, it is contended by the Agency that prior to the Act of 1947, it was not concerned as to whether or not the employee had been discharged or had quit and for that reason had not investigated the verity of the reports as to the cause of separation, from time to time as they were received and for this additional reason these reports were not admissible. This objection goes only to the weight and credence to be given such evidence. Henderson v. Allis-Chalmers Mfg. Co., 65 Idaho 570, 149 P.2d 133. Upon the showing made and the foundation laid, these exhibits are admissible under the provisions of the Uniform Business Records as Evidence Act, supra; Henderson v. Allis-Chalmers Mfg. Co., supra; and the striking of such exhibits constitutes reversible error.

Finally, it is urged by the Agency that to construe the Act as Potlatch contends it should be construed would lead to hopeless confusion and uncertainty, interfering with the ordinary administration of the Act—something which was not intended by the legislature; that for such reason, if no other, the interpretation of the Act urged by Potlatch should not be made. In this connection we must not lose sight of the declared public policy as set forth in the Act, nor should we lose sight of the pronouncements of this Court, that the Act shall receive a liberal, and not a strict construction. Again, it is not a sufficient basis for ignoring the terms of the statute, that they will produce a hardship on the Agency or that it is susceptible to abuse or that it will produce unwise results; these are matters for the legislature—not the courts. 50 Am. Jur., Sections 376, 380, pp. 384, 391. Furthermore, where the provisions of any statutes are clear and certain, there is no room for the application of the rules of construction contended for by the Agency.

We hold that by the plain language of Section 72–1351, I.C., all charges made for benefit payments to the account of covered employers from 1939 through 1948 for employees who had been discharged for cause or who had quit without cause, are required to be deleted and disregarded for the purpose of determining the experience rating for 1949.

The order of the Industrial Accident Board is hereby reversed and the cause re-

manded with directions for further proceedings in the premises.  Costs to Potlatch Forests, Inc.

GIVENS, C. J., and TAYLOR and KEETON, JJ., concur.

PORTER, J., concurs in conclusion.