[Civ. No. 15338. First Dist., Div. One. Mar. 6, 1953.]

DON RICHMOND, Respondent, v. FANNIE FREDERICK, as Executrix, etc., Appellant.

542

Alfred Nelson for Appellant.

Anderson & Peck, Milner J. Anderson, Edward F. Peck, and Gordon W. Nelson for Respondent.

PETERS, P. J.—This is an appeal from a judgment for $1,213 and costs, rendered in an action against an estate upon a rejected claim for money due upon an open book account for real estate commissions claimed to have been earned by plaintiff Don Richmond while working for L. B. Frederick, the deceased. From this judgment the executrix appeals.

The decedent was a real estate broker. As such, he employed some eight or ten salesmen, among them the plaintiff,

to assist him in his operations. Decedent did not operate by listing properties and selling them on commission. He and his salesmen would secure options on properties and exercise them if the properties could be resold at a profit. The commission on the resale was divided 10 per cent to the salesman securing the option, 45 per cent to the salesman making the resale, and 45 per cent to decedent. The profits on the resale above the commission was split 25 per cent to the salesman securing the option, 25 per cent to the salesman making the resale, and 50 per cent to decedent. Accrued profits were paid out semimonthly. Obviously, such profits could accrue over a substantial period of time. Plaintiff was employed by decedent from 1944 to 1946. Late in March, 1946, plaintiff and decedent quarreled and plaintiff quit. At that time the accounts between the parties were unsettled. This action involves commissions earned during 1946 and which became payable before and after plaintiff terminated his employment.

It took the plaintiff up to a sixth amended complaint to state a cause of action not susceptible to demurrer. Only the original, the first amended and sixth amended complaints are to be found in the record. One of the major contentions on this appeal is that the action finally pleaded on an open book account was barred by the statute of limitations. This contention requires an analysis of the pleadings.

The complaint was filed October 31, 1949. After setting forth the jurisdictional facts, including the filing and rejection of a claim for $1,865, the complaint alleges a cause of action for such sum ''for real estate commissions earned by said plaintiff from the said decedent, upon written contract, for the period of 1946 to 1948 inclusive.''

Pursuant to leave of court, plaintiff, on August 1, 1950, filed his (first) amended complaint, in which he abandoned his cause of action upon a written contract and alleged a liability of decedent of $1,865 based upon ''an open book account'' for such commissions.

Demurrers to this and four succeeding complaints were sustained. The sixth amended complaint, which was filed January 5, 1951, and upon which the case proceeded to trial, is also based on an open book account for real estate commissions, also alleging that such commissions were earned from 1946 to 1948 ''while said plaintiff was employed by said decedent as a real estate broker, under an oral agreement, whereby said decedent promised and agreed to pay to plaintiff one-half of any and all commissions received by said decedent

on any and all sales of real estate made by plaintiff while in the employ of the decedent.''

The executrix claims that the cause of action pleaded in the sixth amended complaint was barred by the provisions of section 337, subdivision 2, of the Code of Civil Procedure, which provides that in an action on an account the cause of action is barred four years from the ''date of the last item.'' (See for applications of this rule *Egan* v. *Bishop,* 8 Cal.App. 2d 119 [47 P.2d 500] ; *Gardner* v. *Rutherford,* 57 Cal.App.2d 874 [136 P.2d 48] ; *Furlow P. B. Co.* v. *Balboa L. & W. Co.,* 186 Cal. 754 [200 P. 625] ; *Merchants' Collection Agency* v. *Levi,* 32 Cal.App. 595 [163 P. 870].) The account that was introduced into evidence and upon which the judgment is predicated shows the date of the last entry as September 30, 1946. It is the contention of the executrix that since the sixth amended complaint was not filed until January 5, 1951, and since the plaintiff completely changed his cause of action in that complaint from one on a written contract to one on an open book account, the time for the running of the statute of limitations must be computed from the date of the filing of the sixth amended complaint. So computed, the statute had run when that complaint was filed.

If it be assumed that a change from a written contract to an account stated is an attempt to state a wholly new and different cause of action within the application of the rules applicable to the statute of limitations, a point subject to some doubt,* the difficulty with this contention of· the executrix is that it completely disregards the allegations of the first amended complaint. That complaint was filed August 1, 1950. The last item in the account was dated September 30, 1946. That item and some six others were made within the four-year-period involved. ▇ Thus, the cause of action on an account stated was first brought into the case some two months before the statute of limitations had run. The differences between the first and sixth amended complaints, from the standpoint of the rule under discussion, are minor and did not amount to pleading a completely new and different cause of action. (See cases cited in last footnote.) Thus, the contention that the cause of action on an account stated was barred by the four-year statute of limitations is without merit.

---

*See *Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358] ; *Day* v. *Western Loan & Bldg. Co.,* 42 Cal. App.2d 226 [108 P.2d 702] ; *Cowell* v. *Snyder,* 171 Cal. 291 [152 P. 920] ; *Union Lbr. Co.* v. *J. W. Schouten & Co.,* 25 Cal.App. 80 [142 P. 910].

The executrix next contends that, in any event, the cause of action pleaded and proved was barred by the provisions of section 339, subdivision 1, of the Code of Civil Procedure, providing for a two-year limitation on oral contracts. It is urged that plaintiff pleaded and proved an oral contract with the incidental keeping of accounts, it being contended that such a device cannot be used to lengthen what would otherwise be the two-year-period applicable to oral contracts. There are cases cited by the executrix such as *Stewart* v. *Claudius,* 19 Cal.App.2d 349 [65 P.2d 933]; *Lee* v. *DeForest,* 22 Cal. App.2d 351 [71 P.2d 285]; and *People* v. *California S. Deposit Etc. Co.,* 41 Cal.App. 727 [183 P. 289], that hold directly or by way of dicta, that, where there is a written contract and the debt sued upon arises at a fixed time by the operation of the contract, the incidental keeping of accounts cannot operate to extend the statute. But that rule is not here applicable. In the instant case the pleading and the evidence to which reference will hereafter be made, show not a debt arising at a fixed time by the operation of the express contract, but a running account upon which withdrawals could be made, and without a definite date for payment, because the salesmen could only be paid when a deal was closed. Unlike the cited cases, the contract here was a mere framework necessarily contemplating the keeping of open accounts, and was not, as were those cases, the mere recording of transactions conducted under the terms of the contract. (See *Mercantile Trust Co.* v. *Doe,* 26 Cal.App. 246 [146 P. 692].)

We turn now to a discussion of the relevant evidence. The plaintiff Richmond was permitted to testify that he was a licensed real estate agent, and was permitted to identify his books, which he stated were kept in the regular course of business, but most of his other testimony was successfully objected to under the provisions of section 1880, subdivision 3, of the Code of Civil Procedure. His books were admitted into evidence, subject to a motion to strike, but there is a complete absence of any testimony as to the correctness of the entries in these books. These books were not used by the court in fixing the amount of the judgment. That judgment is predicated on the books kept by decedent.

Before decedent's books were introduced, the plaintiff called several witnesses, including the office manager of decedent, who testified that plaintiff was employed by decedent during the period in 1946 here involved, and that the terms of em-

ployment were as already described. The office manager testified that plaintiff brought signed option papers into the office while working there in a quantity described as ''quite a number.'' These papers were kept by the office. There was evidence that plaintiff worked for decedent until late in March of 1946, when he quit because of a quarrel with decedent. Under the terms of the employment, however, a person quitting could have commissions accruing in his favor thereafter on options secured by him during his employment and sales made by others thereafter. That is what happened in reference to plaintiff.

The office manager also testified that after March of 1946 plaintiff came into the office and demanded of decedent his earned commissions. The then bookkeeper for decedent (who is now the wife of plaintiff) testified to being present after March of 1946 at several conversations between plaintiff and decedent when plaintiff made demands for his commissions. During one of these conversations decedent paid plaintiff $1,000 and admitted more was owing but asked for time to pay. Plaintiff claimed, in these conversations, that over $1,900 was still due and owing. Decedent at no time denied that some sum was owing, and stalled plaintiff, promising to pay in the near future.

It was during the bookkeeper's testimony that the decedent's books were introduced. She, then unmarried, had been the bookkeeper for decedent from January or February of 1946 to September of 1946. She testified that ledger sheets were kept and filed in the office for each salesman, and she found and identified the ledger sheets relating to plaintiff's account. The office manager later testified that each salesman had his ledger account on which he was credited with his earnings, and upon which he could draw. The bookkeeper further testified that she kept the books in her own handwriting at the request of decedent, and that the books showed the account of and the transactions conducted by plaintiff, that the ledger sheets showed the deals closed each month credited to plaintiff, and that there were no other ledger sheets kept. These books showed a balance owing to plaintiff of $1,212.87, treated by common consent as $1,213, the amount of the judgment.

The bookkeeper also testified that in keeping these books she checked with the salesmen, including plaintiff, as to whether any money was owing, and that she recorded the transactions at the time of closing, keeping track of each by its file num-

ber. Any charges against the salesmen were customarily made when they accrued. All deposits received were transmitted to her.

On cross-examination this witness testified that many of the entries in the books were not made by her, but were made by her predecessor, her first entry being either January 23, or February 15, 1946, but she did identify two entries made by her after she was employed showing payments in full as of those dates, and indicated another entry made by her on April 15, 1946, showing a balance of but $4.94. The items here involved built up after that date, and were made by her.

Over the objection of the executrix that a proper foundation had not been laid, these books were admitted into evidence.

While the bookkeeper was on the stand as plaintiff's witness another one of decedent's books was produced. The bookkeeper testified that between July and September, 1946, she was directed by decedent to revise the books, by adding to the accounts already discussed certain items as charges against the plaintiff. In this fashion the existing accounts were "adjusted" by recalculating various claimed charges against the plaintiff. One such item was for $200 as commission on a home purchased by plaintiff for himself from the listings of decedent, the evidence being to the effect that such commissions were not customarily charged salesmen when they purchased a house for their own residence. Another item involves $625 commission on some business property purchased by plaintiff, which he and his wife testified had been purchased after plaintiff had terminated his employment and on which he would, therefore, not have been liable for the charge.

The bookkeeper testified that charges against salesmen were customarily made contemporaneously with their accrual, but this special review and revision of plaintiff's accounts was made at the direction of decedent to "charge him for everything you can" and in order to "make it up as much as he could so there would be no more money due on the books." This set of books, so "adjusted," showed that plaintiff actually owed $8.32 to decedent, instead of the decedent owing to plaintiff $1,213 as shown by the unadjusted books. This $8.32 was made the basis of a cross-complaint by the executrix in the present action.

At the conclusion of the trial the trial court announced its decision in favor of plaintiff, stating that while plaintiff had been unable to prove the correctness of his own books, it would be equitable to use decedent's own unadjusted ac-

counts to fix the amount owing, since such books were kept in the regular course of business and were admissions against interest. As to the adjusted books, the court noted that some items were improper and had been prepared merely to cancel off the indebtedness of plaintiff. The findings, with certain unimportant minor exceptions, found all of the allegations of the sixth amended complaint to be true and that the operative allegations of the answer and cross-complaint were untrue. Judgment was entered for plaintiff in the sum of $1,213.

After first contending, for several reasons, that the cause of action is barred by the statute of limitations, contentions already held to be unsound, the executrix contends that, assuming the books were properly introduced, the evidence is insufficient to sustain recovery upon an open book account in that the evidence is not sufficient on the issue of the correctness of the accounts, or on the issue of the rendition of the services. The question here presented is what evidence, besides the books, is needed to sustain a recovery upon an open book account? No doubt an account does not prove itself, and evidence of the correctness of the items of the account must be offered. But it is also well settled that positive proof of each item is not required, that a general trend of the business can be used as a substitute for the proof of each item and that an account can be proved by the result rather than by all the particular items. (See for a general discussion, 1 C.J., p. 661, § 184 et seq.; 1 C.J.S., p. 604, § 16 et seq.; 1 Cal.Jur.2d, p. 358, § 37.)

Each case must, of necessity, turn on its own facts. In the instant case we start with the fact that the account was proved by the decedent's own books. Obviously, more proof of correctness should be required when the creditor relies on his own books than where he relies on the regularly kept books of the debtor. The books of the debtor, regularly kept by a duly authorized agent, certainly constitute admissions against interest. (*Barth* v. *Adelstein*, 66 Cal.App. 2d 406 [152 P.2d 498].) If the creditor elects to rely on the books of the debtor, he should not be required to produce the same quantum of evidence as would be necessary to prove the correctness of items found in his own books. That is just common sense.

In the instant case the plaintiff not only proved the original entries, but also proved an attempt at noncontemporaneous tampering by decedent. This factor is important.

It creates an inference that the contemporaneous entries were correct. This rule is stated as follows in 1 California Jurisprudence 2d, page 353, section 35: "Where a contemporaneous entry that is against the interest of the party making it in his own book is subsequently altered by that party in his own favor and introduced into evidence by him, it will be presumed that the original entry was according to the facts, since it was made at the time of the transaction and was against the interest of the party making it, and since it was in his interest to make the alteration." While here the plaintiff introduced the adjusted accounts, it was those accounts that were relied upon by the executrix to support her cross-complaint.

In addition to these facts there was the evidence of the office manager and bookkeeper, already summarized, which proved the contractual relationship and the nature of the contract, and that plaintiff had secured numerous options. That evidence, plus the inferences already discussed, amply supports the trial court's determination that the items contained in the books correctly stated the amount owed.

The last contention of the executrix is that the unadjusted books of account should not have been admitted into evidence over her objection that a proper foundation had not been laid. She claims that the evidence shows that only one of the bookkeepers who kept the books testified, that the witness did not make all of the entries, that the witness did not testify to knowing anything about the performance of the services, or deals, or to have gone to original sources for her information. The point is without merit. The pertinent section is section 1953f of the Code of Civil Procedure, added to our law in 1941 as part of the Uniform Business Records as Evidence Act. It provides: "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The evidence relating to the foundation for the introduction of the books has already been fully set forth. That evidence clearly sustains the admission of the books under this section. While under the law as it existed prior to 1941 the foundation here made might have been insuffi-

cient (see *Chan Kiu Sing* v. *Gordon,* 171 Cal. 28 [151 P. 657]), the very purpose of the act was to broaden and liberalize many of strict foundational requirements of the common law. (See *Loper* v. *Morrison,* 23 Cal.2d 600 [145 P.2d 1]; *Robinson* v. *Puls,* 28 Cal.2d 664 [171 P.2d 430]; comment in 35 Cal.L.Rev. 434; discussion in 1 Cal.Jur.2d, p. 354, § 36.)

 The section grants to the trial court a wide discretion in determining whether the mode of keeping the books justified their admission. (*Thompson* v. *Machado,* 78 Cal.App. 2d 870 [178 P.2d 838]; *Nichols* v. *McCoy,* 38 Cal.2d 447 [240 P.2d 569]; see discussion 35 Cal.L.Rev., p. 434, particularly at pp. 441-442.) A holding of the sufficiency of the evidence as to the foundation will not be disturbed if supported by substantial although conflicting evidence or inferences therefrom. (*Egan* v. *Bishop,* 8 Cal.App.2d 119 [47 P.2d 500]; *Copriviza* v. *Rilovich,* 4 Cal.App. 26 [87 P. 398].)

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.