538 P.2d 760

**SHORE LINE PROPERTIES, INC.,**
Appellant,

v.

**DEER–O–PAINTS AND CHEMICALS, LTD.,**
a corporation, Appellee.

No. 1 CA–CIV 2362.

Court of Appeals of Arizona,
Division 1,
Department B.

July 24, 1975.

Rehearing Denied Sept. 4, 1975.

Review Denied Oct. 28, 1975.

Behrens, MacLean & Jacques by Raoul T. Jacques, John K. Graham, Phoenix, for appellant.

Robbins, Green, O'Grady & Abbuhl, P. A. by Michael J. O'Grady, Phoenix, for appellee.

Shimmel, Hill & Bishop by James B. Rolle, III, Charles W. Herf, Phoenix, for appellee.

## OPINION

EUBANK, Judge.

This appeal raises several questions regarding the Uniform Commercial Code, the admission and rejection of certain evidence, and the sufficiency of the evidence to support the judgment.

The appellant, Shore Line Properties, Inc., is a foreign corporation licensed to do business in Arizona. As general contractor, it undertook the development of the Shore Line Highlands Subdivision in Lake Havasu City, Arizona—a project involving the construction of 127 prefabricated panel houses. In March 1970, Shore Line was negotiating with Deer-O-Paints & Chemicals, Ltd., an Arizona corporation and the appellee herein, concerning development of a coating product with which to paint the plywood exterior of certain houses in the subdivision. Prior to that time, Shore Line had been applying a product called "Tuff-Tex" to the homes. The parties discussed the purchase by Shore Line of Deer-O product to replace "Tuff-Tex". During these discussions, Shore Line informed Deer-O of the price it would pay for the product, the method of application it intended to use, and the nature of the surface preparation it was then using on plywood exteriors. Deer-O agreed to manufacture a suitable product and to provide a sample with which Shore Line could paint a "test house".

In due course, the sample was delivered and tested, and Shore Line, apparently satisfied with the product, decided to order enough for use throughout the remainder of the subdivision. Consequently, written purchase orders were submitted to Deer-O which contained a seller's warranty that the product was free of defects in quality and workmanship. In filling these orders, Deer-O sent invoices to Shore Line which contained the following provision:

Deer-O-Paints are warranted to conform to formula and sample, but not as to use or application.

After Shore Line had painted over 40 houses with the Deer-O product, delamination and surface checking appeared. As a result, Shore Line brought this action seeking damages for breach of warranty and negligent manufacture. Deer-O counterclaimed for money due on the open account between the parties. The trial court, sitting without a jury, made extensive Findings of Fact and Conclusions of Law which resulted in a judgment favorable to Deer-O on both the complaint and the counterclaim. This appeal followed.

Appellant's first contention is that the trial court erred in applying the parol evidence rule to exclude testimony of pre-contract conversations in which Deer-O warranted that its product was as good as "Tuff-Tex" and only required a one-coat spray application. Such representations were allegedly made during discussions preceding the exchange of purchase orders and invoices between the parties.

A.R.S. § 44–2309 (U.L.A.–U.C.C. § 2–202) provides:

Final written expression: Parol or extrinsic evidence

Terms with respect to which the confirmatory memoranda of the parties agreed or which are otherwise set forth in a writing *intended by the parties as a final expression of their agreement* with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

1. By course of dealing or usage of trade (§ 44–2212) or by course of performance (§ 44–2315); and

2. By evidence of consistent additional terms *unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.* (Emphasis added)

Appellant argues that since the forms exchanged by the parties contain different warranty provisions, there are no warranty terms with respect to which the confirmatory memoranda of the parties agree, and parol evidence is therefore admissible. Such an analysis, however, rests upon the supposition that the parties had a prior oral contract and that the forms exchanged were merely confirmatory memoranda which agreed as to price, volume and color, but not as to warranties. This argument

misconstrues the language of A.R.S. § 44–2309 and its application.

In substance, the parol evidence rule states that if a court finds that a writing was intended as a complete and exclusive statement of the terms of an agreement, then the writing *alone* constitutes the contract. In addition, to the extent that the writing incorporates terms upon which the parties agreed, the writing controls as to those terms and anything contradictory or inconsistent therewith is not admissible as evidence. *See* J. White & R. Summers, *Uniform Commercial Code* § 2–9 (1972). Accordingly, the trial court in its Conclusions of Law stated:

> 3. The writings exchanged by the parties subsequent to the oral conversations constitute the contract between them.

Appellant does not seriously contend that the forms exchanged by the parties did not give rise to a contract. What is argued, however, is that insofar as the contract is embodied in these documents, it is neither final, complete, nor exclusive with respect to the warranties applicable to the sale. We do not agree.

The invoices submitted by Deer-O expressly disclaimed any warranties as to use or *application*. Consequently, evidence of any oral representation by Deer-O that its product only required a single application would contradict the written agreement of the parties. Such evidence is inadmissible where the writings of the parites were intended as a final expression of their agreement. The intent of the parties as to finality was for the trial court to determine from the documents before it. *Hofmann Co. v. Meisner,* 17 Ariz.App. 263, 497 P.2d 83 (1972). We will not disturb that determination where, as here, there is reasonable evidence to support it. As to the alleged representation by Deer-O that its product was as good as "Tuff-Tex", A.R.S. § 44–2309(2) specifically provides that whether a writing was intended as a complete and exclusive statement of the terms

of a contract is for the court to decide. Here, the trial court found that the forms exchanged by the parties constituted their contract. It did not abuse its discretion in subsequently holding parol evidence inadmissible to vary or supplement that contract.

Appellant next contends that Deer-O breached several express warranties under A.R.S. § 44–2330 (U.L.A.–U.C.C. § 2–313), which provides in part:

> Express warranties by affirmation, promise, description, sample
>
> A. Express warranties by the seller are created as follows:
>
> 1. Any affirmation of fact or promis is made by the seller to the buyer which relates to the goods and becomes part of *the basis of the bargain* creates an express warranty that the goods shall conform to the affirmation or promise.
>
> 2. Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> 3. Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model. (Emphasis added)

It is argued that Deer-O represented that its product was as good as "Tuff-Tex" and only required a single application, and that these statements were affirmations of fact which became part of the basis of the bargain between the parties. We recognize that these are precisely the same representations which the trial court excluded under the parol evidence rule. In our opinion, they are not now rendered admissible merely because appellant chooses to characterize them as express warranties.

A.R.S. § 44–2333 (U.L.A.–U.C.C. § 2–316) provides in part:

> Exclusion or modification of warranties
>
> A. Words or conduct relevant to the creation of an express warranty and

words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but *subject to the provisions of this article on parol or extrinsic evidence (§ 44–2309)* negation or limitation is inoperative to the extent that such construction is unreasonable. (Emphasis added)

The reference to the parol evidence rule is intended to protect the seller against allegations of oral warranties which are not part of the contract. However, the protection afforded by this section is subject to a significant restriction, that is, the court must first determine that the written agreement of the parties is final, complete and exclusive. Once this determination has been made, evidence of express oral warranties is not admissible to vary or supplement the contract. Where such warranties are alleged, they are effectively negated if not included in the writing which embodies the contract. Consequently, the trial court properly concluded that there was no breach of an express warranty by Deer-O. *See O. S. Stapley Co. v. Newby,* 57 Ariz. 24, 110 P.2d 547 (1941); *Beauchamp v. Wilson,* 21 Ariz.App. 14, 515 P. 2d 41 (1973).

It is also argued that Deer-O breached an implied warranty of merchantability. A.R.S. § 44–2331 (U.L.A.–U.C.C. § 2–314) provides:

> Implied warranty: merchantability; usage of trade
>
> A. Unless excluded or modified (§ 44–2333), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the service for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> B. Goods to be merchantable must be at least such as:
>
> 1. Pass without objection in the trade under the contract description; and

2. In the case of fungible goods, are of fair average quality within the description; and

3. *Are fit for the ordinary purposes for which such goods are used*; and

4. Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

5. Are adequately contained, packaged, and labeled as the agreement may require; and

6. Conform to the promises or affirmations of fact made on the container or label if any.

C. Unless excluded or modified (§ 44–2333), other implied warranties may arise from course of dealing or usage of trade. (Emphasis added)

Specifically, appellant contends that the Deer-O product was not fit for the ordinary purpose for which such products are sold, i. e., to beautify and protect exterior surfaces. Moreover, appellant contends that Deer-O knew its product was required as a substitute for "Tuff-Tex" in the coating of plywood exteriors, and that the product was not fit for this particular purpose. Therefore, appellant claims that Deer-O also breached an implied warranty of fitness for a particular purpose under A.R.S. § 44–2332 (U.L.A.–U.C.C. § 2–315), which provides:

> Implied warranty: fitness for particular purpose
>
> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under § 44–2333 an implied warranty that the goods shall be fit for such purpose.

There is substantial evidence in the record, however, that the Deer-O product was free of defects and consistent with the implied warranties incident to the sale.

When it is alleged that a seller has breached an implied warranty, the burden is on the buyer to prove that the breach did in fact occur. A.R.S. § 44–2370(D); *see Standard Packaging Corp. v. Continental Distilling Corp.*, 259 F.Supp. 919 (E.D.Pa.1966); *Consolidated Supply Co. v. Babbitt*, 96 Idaho 636, 534 P.2d 466 (1975). Here, the trial judge journeyed to Lake Havasu to view the houses upon which surface checking and splitting appeared. He heard the testimony of experts in the fields of chemicals, paints and plywood, some of whom testified that the damage in question could not be caused by a paint product and that only the highest quality components were used in the Deer-O product. Moreover, that was substantial evidence that the problem at Lake Havasu resulted from inexperienced painters applying an inadequate amount of paint to plywood which had been improperly prepared and handled. In this regard, Mr. Robert Baker, laboratory director for Deer-O, testified:

Q Then isn't your testimony here today, Mr. Baker, that the fault as acknowledged on the houses is based upon the application and quantity of paint and not the formula or variations?

A Essentially, yes.

Q Do you acknowledge at all, Mr. Baker, that there was some failing in the paint?

A The paint in this case did not fail.

Q The paint did not fail? Was it the proper paint for the job?

A Yes.

Q In your opinion?

A Yes.

Q Why does it look so bad?

A The paint was applied over plywood that had been improperly handled prior to application. The edges were not sealed on the plywood, it was allowed to dry out and crack before it was painted, the material was applied by incompetent painters and at an insufficient mill thickness. Because of a summation of all of these factors, we have a failure down there.

Clearly, the trial court could properly conclude from this and like evidence that no breach of an implied warranty occurred. *See Contractor & Mining Service & Supply, Inc. v. H & M Tractor & Bearing Corp.*, 4 Ariz.App. 29, 417 P.2d 542 (1966); *Gallagher v. Viking Supply Corp.*, 3 Ariz. App. 55, 411 P.2d 814 (1966); *Iverson Paints, Inc. v. Wirth Corp.*, 94 Idaho 43, 480 P.2d 889 (1971).

It is likewise evident that the record does not support Shore Line's contention that Deer-O was negligent in manufacturing and testing its product. On the contrary, there is substantial evidence in the record to support the trial court's Conclusions of Law that:

9. Deer-O was not negligent in the selection and preparation of the product.

\* \* \* \* \* \*

16. Shore Line was negligent in its procedures for preparing the exterior plywood surface and applying the Deer-O product thereon.

17. Shore Line was negligent in applying the Deer-O product to the exterior surfaces when said surfaces were openly and visibly checking and delaminating.

Rule 52(a), Rules of Civil Procedure, 16 A.R.S., provides that the trial court's findings cannot be set aside unless clearly erroneous. Nor should its conclusions be ignored unless they are erroneous. *Lobban v. Vander Vries Realty & Mtg. Co.*, 48 Ariz. 180, 60 P.2d 933 (1936). Here, both the Findings of Fact and Conclusions of Law entered by the trial court find strong support in the evidence, and lead us to conclude that they contain no error.

Appellant contends that the trial court erred in refusing to admit certain Federal Housing Administration records into evidence, which related to the final FHA inspection of the Deer-O painted homes. It is argued that these records were admissible under the Business Rec-

ords Act (A.R.S. § 12–2262) and under Rule 44(q), Rules of Civil Procedure, 16 A.R.S. Both of these statutes provide in part:

> Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and *if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.* (Emphasis added)

Clearly, the trial court has wide discretion with regard to admissions under this provision. *Merrick v. United States Rubber Co.,* 7 Ariz.App. 433, 440 P.2d 314 (1968). Here, the trial court refused to admit the records in the absence of foundational testimony concerning the qualifications of the FHA inspector who filed the report. Obviously, in the trial court's opinion, the source for the information contained in the report was not of a stature sufficient to justify admission of the document. *See Horizon Corp. v. Home Insurance Co.,* 20 Ariz.App. 162, 511 P.2d 175 (1973). We cannot say that the trial court abused its discretion in making this determination.

Appellant assigns error to the trial court's admission of the testimony of Mr. Raymond Riley into evidence, insofar as that witness testified concerning conversations he had with Shore Line's project manager and job superintendent. Mr. Riley repeated statements which he attributed to these individuals concerning insufficient surface preparation and inadequate paint application. It is argued that this testimony constituted hearsay. However, with regard to the statements attributed to the job superintendent appellant did not object to their admission at the time of trial on the ground of hearsay. Consequently, we will not consider this objection on appeal. *Jost v. Ross,* 82 Ariz. 245, 311 P.2d 840 (1957). Appellant did object to the testimony concerning the project manager's statements on the ground of hearsay. However, whether or not this testimony was inadmissible hearsay need not concern us, because there was other sufficient competent evidence to support the judgment excluding this testimony. *Bonine v. Bonine,* 90 Ariz. 319, 367 P.2d 664 (1961); *Home Owners' Loan Corp. v. Bank of Arizona,* 54 Ariz. 146, 94 P.2d 437 (1939); *Johnson v. Hill,* 1 Ariz.App. 290, 402 P.2d 225 (1965).

Finally, we note that appellant has raised the issue of whether its surety, Argonaut Insurance Company, is liable to Deer-O for the judgment rendered. The surety was a party to the litigation in the trial court but was dismissed from this appeal for failure to post a proper bond. Our order dismissing Argonaut from the case has become final. Therefore, that part of the trial court's judgment holding the surety liable to Deer-O is not subject to review.

The judgment is affirmed.

HAIRE, C. J., and JACOBSON, P. J., concur.