597 P.2d 26

Olegario G. CURIEL, Plaintiff-Appellant,

v.

Ronald MINGO, Defendant-Respondent.

No. 12870.

Supreme Court of Idaho.

June 29, 1979.

Michael R. Crabtree, Twin Falls, for plaintiff-appellant.

Michael O. Douglas, Duffin, Douglas & Crowley, Burley, for defendant-respondent.

WALTERS, Justice, Pro Tem.:

The facts of this case, hereinafter recited, have been formulated from the transcripts on appeal, briefs of counsel, and the findings of fact entered by the trial court, inasmuch as this matter is before the Court upon a limited issue and only a portion of

the reporter's transcript of the proceedings below has been provided in this appeal pursuant to I.A.R. 17(f).

It appears that in 1975, the defendant-respondent, Ronald Mingo (hereinafter Mingo), entered into an agreement with Murdock Farms, near Winnemucca, Nevada, to harvest and haul a potato crop grown that year on those farms. In order to implement this contract, Mingo hired the plaintiff-appellant Olegario G. Curiel (hereinafter Curiel) by oral agreement to haul the potatoes from the fields as they were harvested by Mingo. Under this oral agreement Mingo was to make advances and payments on behalf of Curiel and then deduct such advances and payments from the total amount earned by Curiel. At the completion of the contract, Mingo disagreed as to the amount of money payable by Mingo to Curiel for the hauling services he had rendered, and Mingo paid nothing to Curiel. When the parties were unable to resolve these differences, Curiel brought suit against Mingo for an accounting and for payment for services rendered.

Following trial of the matter to the court, the trial court found that under the contract for hauling potatoes for Murdock Farms, sublet by Mingo to Curiel, Curiel earned the sum of $3,725.00 before deductions and offsets. The trial court then found that Mingo had made payments for Curiel totaling $3,875.73 and that Mingo was entitled to offset said amount against the sum earned by Curiel, leaving a deficit owed by Curiel to Mingo. Judgment was then entered in favor of Mingo for the overpayment, from which judgment Curiel has appealed.

During the course of the trial Mingo offered evidence concerning the amount of vehicle fuel consumed by Curiel while hauling potatoes for Mingo. Specifically, Mingo offered Exhibit K, a photocopy of what Mingo claimed was a ledger-sheet listing Curiel's fuel. Throughout, Curiel disputed Mingo's accounting and specifically the amounts of fuel which were shown in Exhibit K to be chargeable to him.

Apparently Mingo received the photocopy of the ledger from Murdock Farms' accountant, who apparently had prepared it from statements given him by the company from which Mingo's drivers obtained their fuel. Mingo then incorporated this photocopy of the ledger into his own business records and used it as the basis for computing the amount to be set off against the money he owed Curiel for the hauling services. The appellant represents that the amount of money earned by Mingo's drivers was based upon the weight of potatoes hauled, at a fixed rate per hundredweight. From these gross earnings Mingo deducted fuel and other charges incurred by the drivers during hauling.

When Exhibit K was offered into evidence, Curiel objected on hearsay grounds. The objection was overruled, and the exhibit was admitted. After Findings of Fact and Conclusions of Law were entered, Curiel made a Motion to Amend Findings and Conclusions, at which time he renewed his argument against the admission of Exhibit K into evidence. The motion was denied and Curiel appeals, assigning as error the admission into evidence of Exhibit K.

Appellant argues that Exhibit K did not qualify for admission into evidence under the Business Records as Evidence Act, I.C. § 9–414, and that Exhibit K, a photocopy reproduction of a writing, was not qualified under I.C. § 9–417 and § 9–411 for admission into evidence.

The pertinent section of the Idaho Uniform Business Records as Evidence Act provides as follows:

"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to the identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." I.C. § 9–414.

Shortly after the adoption of I.C. § 9–414, this Court noted that by enactment of the

Business Records as Evidence Act the legislature intended to broaden the scope of admissibility into evidence of records made in the regular course of business. *Henderson v. Allis Chalmers*, 65 Idaho 570, 581, 149 P.2d 133, 139 (1944). *See also State v. Baldwin*, 69 Idaho 459, 208 P.2d 161 (1949); *In re Potlatch Forests*, 72 Idaho 291, 240 P.2d 242 (1952); *John Scowcroft & Sons Co. v. Roselle*, 77 Idaho 142, 289 P.2d 621 (1955); *Kelson v. Ahlborn*, 87 Idaho 519, 393 P.2d 578 (1964); *Daniel v. Moss*, 93 Idaho 612, 469 P.2d 50 (1970).

It has been noted that necessity and trustworthiness are the fundamental justifications underlying the admissibility of hearsay evidence as an exception to the general rule against the admissibility of such evidence. Bell, Handbook of Evidence for the Idaho Lawyer, 2d Ed. p. 130. The Business Records as Evidence Act sets forth the statutory requirements for the necessity and trustworthiness of such proffered evidence. In *Kelson v. Ahlborn, supra*, this Court quoted with approval the following from a New Jersey case:

"The basic theory of the uniform law is that records which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, and therefore ought to be received in evidence unless the trial court after examining them and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence. The last clause of the statute [which states] that the books should be accepted 'if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission,' confers considerable discretion upon the trial judge." [*Mahoney v. Minsky*, 39 N.J. 208] 188 A.2d [161] at 166. 87 Idaho at 529, 530, 393 P.2d at 584.

The Arizona Court has held that the trial judge clearly has wide discretion with regard to admissions in evidence under the Business Records Act. *Shore Line Properties, Inc. v. Deer-O-Paints & Chem. Ltd.*, 24 Ariz.App. 331, 538 P.2d 760 (1975). In *Rich-mond v. Frederick*, the California Court held that:

"The section grants to the trial court a wide discretion in determining whether the mode of keeping the books justified their admission. [Citations] A holding of the sufficiency of the evidence as to the foundation will not be disturbed if supported by substantial although conflicting evidence or inferences therefrom." *Richmond v. Frederick*, 116 Cal. App.2d 541, 253 P.2d 977, 982–983 (1953).

In ruling on a close question regarding the propriety of admitting a federal estate tax return under I.C. § 9–414, we held:

"It was within the district court's discretion under the last clause of I.C. Sec. 9–414 to admit the record. If the question as to the admission of evidence is on the borderline, the ruling of the trial court will not be disturbed. This Court will not disturb a discretionary ruling of a lower court unless the trial court's discretion was clearly abused." *Daniel v. Moss*, 93 Idaho 612, 613–614, 469 P.2d 50, 51–52 (1970).

Here, at the time Mingo offered Exhibit K in evidence, Curiel did not object upon the ground that, as a photocopy, foundation for its admissibility was not made pursuant to I.C. § 9–411 and I.C. § 9–417. This point was apparently first raised by the appellant at the hearing on his Motion to Amend the Findings. To gauge the exercise of discretion of the trial court in admitting Exhibit K in evidence, we look to the rationale therefor, articulated by the Court during the hearing of appellant's Motion to Amend Findings of Fact and Conclusions of Law. There the trial court stated:

"THE COURT: All right, fine. Mr. Crabtree, one problem we have is [sic] Findings and Conclusions is that whenever a court acts as a jury in a court trial, the court has to be the finder of fact and as far as the Defendant's Exhibit K is concerned, I did admit that as a business record and, although, I didn't go through all the specifics of each requirement in the Idaho Code, as I recall the testimony, this is a specific document which has day by day entries of exact amounts that were used by the trucks and just my own

logic tells me that that's probably the most accurate record we have in this whole trial. I realize that there could be an argument that it is a photocopy, and as I recall the testimony, also of Mr. Mingo, this was charges of that office or he was in and out of there all of the time. This is how they ran the business. This is the type of record that was actually kept and the only record that could be referred to. So, I am not going to change my opinion on that." Transcript, pp. 15–16.

It is clear the trial court was satisfied with the foundation laid for the necessity and trustworthiness of Exhibit K and its admission in evidence. Given the wide discretion allowed to the trial court and the substantial although conflicting evidence upon which Exhibit K was admitted, we are not persuaded that the trial court clearly abused its discretion in admitting the exhibit into evidence.

The judgment in favor of the respondent is therefor affirmed.

No attorney fees are allowed, costs to respondent.

SHEPARD, C. J., BAKES, J., and MAYNARD, J., Pro Tem., concur.

BISTLINE, Justice, dissenting.

The Court properly notes that the legislative purpose behind § 9–414 I.C. was to broaden the scope of admissibility of business records, and that a trial judge has wide discretion in determining whether or not the "business records" sought to be admitted possess the necessary attributes of necessity and trustworthiness. However, the discretion does not arise until the preliminary requirements are satisfied. *Kelson v. Ahlborn, supra,* 87 Idaho at 529–530, 393 P.2d 578. Even then, the trial court must have a rational basis for the exercise of this discretion.

In this case, the trial court clearly erred when it allowed Exhibit K into evidence. This exhibit was allegedly prepared by an accountant who worked not for Mingo, but for Murdock Farms, after he received billing statements, not from Mingo, not from Murdock Farms, but from a dealer for gas put in Curiel's trucks. The ledger sheet was then allegedly photocopied by him and sent to Mingo, who incorporated it into his records. There was more than just the "questionable sufficiency of the foundation laid" or "borderline question of admission," as referred to in the Court opinion; there was a total lack of foundation. There was no testimony by the accountant who prepared the records or from any other qualified witness as to the identity of the records, their mode of preparation, that they were made in the regular course of business, or that they were made at or near the time the events occurred. There is also a total absence of testimony to authenticate the exhibit sought to be entered as even being the ledger sheet sent to Mingo. Mingo's testimony alone was not sufficient to lay a proper foundation because Mingo had absolutely nothing to do with the preparation of the records. Since the preliminary requirements for admission were not met, the exhibit should not have been admitted.

The requirement of foundational testimony by the person preparing or holding the records has been consistently applied by this Court. In *John Scowcroft and Sons Co. v. Roselle, supra,* the plaintiff introduced the original records of its book of accounts showing the account of the defendant. In addition, the defendant admitted making payments and owing money to the plaintiff.

In *Kelson v. Ahlborn, supra,* the records sought to be admitted were the plaintiff's account books which purported to show the amount of cash advanced to the defendant. In *Mahoney v. Minsky,* 39 N.J. 208, 188 A.2d 161 (1963), the case relied upon by the court in *Kelson, supra,* defendants sought to have their books of account used to show payment of a loan. The foundation testimony was provided by the certified public accountant who had kept their books for 25 years.

In *Hammond v. Hammond,* 92 Idaho 623, 448 P.2d 237 (1968), the records sought to be admitted were a financial statement of the company in question. This Court in affirming the admission of these records said:

These exhibits were introduced into evidence through the witness Donald E. Fairley, a certified public accountant.

*The witness testified that each statement had been prepared by him* with the assistance of the bookkeeper of the H. J. Hammond Company, in the ordinary course of business of and for the company and from the books and records of the company. No attempt was made to contradict Mr. Fairley in this connection. Hence, the exhibits were admissible as business records. I.C. §§ 9–413 and 9–414. (emphasis added)

92 Idaho at 626, 448 P.2d at 240.

In *Daniel v. Moss, supra,* a case cited by the majority to demonstrate the broad discretion of the trial court, the record sought to be admitted was a certified copy of the federal estate tax return for the decedent defendant's estate. The tax return was admitted during the course of the accountant's testimony who prepared the form. In sustaining the admission of the tax return, this Court in pointing out why the return was trustworthy, said:

This tax return was "made in the regular course of [the] business" of the accountant Hefley and was required for the regular business of the estate. . . . For one thing, attorney's fees are stated on the tax return in order to establish a tax deduction. It is, therefore, unlikely that the estate would underestimate the amount of attorney's fees in order to pay excess taxes. The estate and the respondent were legally obligated to file a complete return. *There was ample testimony on the part of the accountant* that he had made the attorney's fee entry based on his own first-hand knowledge of the transaction of which it is evidence. Finally, the return was prepared well over two years before Vernon Daniel's demise, and, therefore, probably not in contemplation of that death or this action. (emphasis added)

93 Idaho at 613, 469 P.2d at 51.

In *Simplot Soilbuilders, Inc., v. Leavitt,* 96 Idaho 17, 523 P.2d 1363 (1974), the documents in question were prepared by the defendant to record his dealings with a third party. In this case the defendant was present to testify about the exhibits and this Court held they were business records within I.C. § 9–414 and were admissible.

The majority cites two additional cases pertaining to the wide discretion of the trial court in admitting evidence under the Business Records Act. In the first case, *Shore Line Properties, Inc., v. Deer-O-Paints and Chemicals, Ltd.,* 24 Ariz.App. 331, 538 P.2d 760 (1975), the trial court refused to admit into evidence certain Federal Housing Administration records which related to the final FHA inspection of homes painted by the defendant. The trial court was found not to have abused its discretion when it "refused to admit the records in the absence of foundational testimony concerning the qualifications of the FHA inspector who filed the report. Obviously, in the trial court's opinion, the source for the information contained in the report was not of a stature sufficient to justify admission of the document." 538 P.2d at 766.

In the second case, *Richmond v. Frederick,* 116 Cal.App.2d 541, 253 P.2d 977 (Cal. 1953), plaintiff was a salesman who sought to enter his ex-employer's books into evidence. They were admitted during the testimony of the bookkeeper who prepared the books. The bookkeeper testified that ledger sheets were kept and filed in the office for each salesman and she found and identified the ledger sheets pertaining to the plaintiff's account. She also testified that the books were kept in her own handwriting at the request of the decedent defendant. The executrix objected on the ground that a proper foundation had not been laid because the bookkeeper was not the only person who kept the records. The court said that point was without merit and held the books were admissible under the Uniform Business Records as Evidence Act. *Id.* 253 P.2d at 982.

As can be seen from all of these cases, business records are admissible when a person *who has personal knowledge or was directly related to the preparation testifies and provides a proper foundation.*

In the present case, the accountant who received the statements from the gas company, and who then entered them on Mur-

**308**

dock's books and who then allegedly photocopied the ledger sheet and transmitted it to Mingo was not brought forth to lay a proper foundation for the admission of Exhibit K. The accountant's testimony should also have been required to authenticate the ledger sheet as the one sent to Mingo. According to McCormick on Evidence § 219 (E. Cleary ed. 1972),

> "[i]t is generally held that business records may be authenticated by the evidence of one familiar with the books of the concern, such as a custodian or supervisor, who has not made the record or seen it made, that the offered writing is actually part of the records of the business." (citations omitted)

at 545.

In *Isaacson v. Obendorf*, 99 Idaho 304, 581 P.2d 350 (1978), this Court held that it was error in a paternity proceeding to admit blood test results without requiring the accompanying testimony of the expert who performed the tests. This Court 581 P.2d at 355 said:

> The essence of the hearsay rule is a requirement that testimonial assertions shall be subjected to the test of cross-examination. The theory being that the many possible deficiencies, suppressions, sources of error, and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination. 5 Wigmore, Evidence § 1362 (Chadbourn rev. 1974). The blood test report, an unsworn, out-of-court written statement of an expert concerning the possible paternity of the appellant, was admitted without giving the parties an opportunity to examine the expert who made the tests as to his competency, the methods used by him, and other factors relating to the reliability of the test. Respondent established no foundation for the admission of the report under any of the numerous exceptions to the hearsay rule.

In the present case, Curiel was denied the opportunity to cross-examine the account as to the preparation of the ledger sheets, especially in regards to entries concerning a Serrato. Curiel also had no opportunity to ascertain whether this was even the ledger sheet sent to Mingo. For these shortcomings and for the reasons given above, the trial court erred and the judgment should be reversed.