**STANDARD PACKAGING
CORPORATION**

v.

**CONTINENTAL DISTILLING
CORPORATION.**

Civ. A. No. 32730.

United States District Court
E. D. Pennsylvania.

Nov. 2, 1966.

Strong, Barnett & Grasberger, by Edwin B. Barnett, Philadelphia, Pa., for plaintiff.

Gratz, Sperling & Spiegel, by Robert J. Spiegel, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, District Judge.

In this diversity action, plaintiff sued for the price of goods sold to defendant. Defendant counterclaimed, alleging breach of the implied warranties of merchantability and of fitness for a particular purpose. Uniform Commercial Code, 12A P.S. §§ 2–314, 2–315.

Plaintiff proved simply the book account and rested, whereupon defendant offered its proof, following which we granted plaintiff's motion for a directed verdict. Defendant has moved for a new trial. Viewing all the evidence in the light most favorable to defendant, the following are the facts:

There is no dispute as to the price agreed upon by the parties ($10,369.25) or as to the specifications of the goods which were ordered and delivered. The goods consisted of thousands of individual "holiday" boxes into each of which defendant was to place a bottle of its whiskey. Pursuant to defendant's purchase order, the individual boxes were circled by an acetate band, on which appeared certain information pertaining to the liquor as required by law. The idea was that this band could be easily removed by the ultimate purchaser so that the box would be free of commercial labeling when presented to the recipient as a gift. Each case was prepared for the reception of the ten or twelve boxes by the insertion of "cells" which served as compartments for each package.

The insertion of the bottles into the boxes presented no difficulty. Unfortunately, though, when defendant's packers began to insert the individual boxes into the cells of the shipping case, many, if not most, of the acetate bands either ripped or were otherwise damaged. Since the goods could not be shipped in this condition, defendant expended additional time, effort, and money in devising a solution to its problem. The solution, which was largely but not entirely successful, consisted of (1) enlarging the size of the cells in the shipping case in an attempt to accommodate the larger bulk of the holiday package, and (2) the insertion of the holiday boxes into glassine bags before they were placed in the shipping cells so as to reduce contact between the bands and the cell sides.

The defendant's usual year-round practice was to ship liquor bottles in compartmentalized cases without any wrapping or box. It was only during the holiday season that the bottles were first placed in special "gift packages," whose design was approved by defendant (and, in this case, executed by plaintiff), and then the boxes were inserted in the shipping cells. Defendant knew that the cells would have to be enlarged to contain the special boxes, and accordingly they were enlarged even before the difficulties with the acetate bands developed.

After the acetate bands began to tear, the cells were again enlarged, but the overall shipping-case being of finite dimensions, unlimited further enlargement would have been impossible. Furthermore, defendant's witness Boddorff testified that the cells could not be too large, else there would be danger of breakage. However, it was not until after the holiday boxes had been preliminarily inserted into the glassine bags that the difficulty was in any material way remedied.

Since the only dispute at trial concerned the alleged breach of implied warranties, the burden was on the defendant to prove that the breach had in fact occurred. Chandler v. Lafferty, 282 Pa. 550, 128 A. 507 (1925); Wilbert v. Pittsburgh Consol. Coal Co., 385 Pa. 149, 122 A.2d 406 (1956). We concluded at trial that defendant had failed to sustain its burden and accordingly directed a verdict for plaintiff. Defendant now contends that we were in error, alleging that its evidence, if believed, raises fair and legally cognizable inferences sufficient to sustain the counterclaim.

First, defendant claims that its evidence establishes a breach of the implied warranty of merchantability:

" * * * Goods to be merchantable must be at least such as * * * are

fit for the ordinary purposes for which such goods are used * * *." Uniform Commercial Code, 12A P.S. § 2–314.

See Eimco Corp. v. Lombardi, 193 Pa. Super. 1, 162 A.2d 263 (1960); Knapp v. Willys-Ardmore, Inc., 174 Pa.Super. 90, 100 A.2d 105 (1953).

■ The "ordinary" purpose for which plaintiff's holiday box was to be used was to contain a bottle of defendant's liquor. This purpose was unquestionably well-served, and there are neither allegations in the counterclaim nor proof in the record that the package did not adequately contain the bottle. If defendant had been able to ship or sell its holiday packages without the necessity of further packing them into cases for re-shipment, no problem at all would have arisen under the contract.

■ A sample of the containers and acetate band manufactured by plaintiff had been submitted to defendant in advance of actual production. After certain modifications, the styles were approved by defendant, the items were manufactured, and they were delivered to defendant, which used the boxes for the very purpose for which they were intended. Every specification was, so far as the record reveals, fully complied with. It was only when the boxes were inserted into the re-shipping cells that difficulty ensued. The boxes as such were unquestionably merchantable.

As to the acetate band, we find no evidence whatsoever to sustain defendant's contention that it was in any way unmerchantable. It did what it was supposed to do: it circled the package and contained the appropriate wording. It was torn and mutilated only when an attempt was made to insert the package into the re-shipping cells.

Secondly, defendant alleges a breach of the implied warranty of fitness for a particular purpose.

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is * * * an implied warranty that the goods shall be fit for such purpose." Uniform Commercial Code, 12A P.S. § 2–315.

See Royal Pioneer Paper Box Manuf. Co. v. Louis DeJonge & Co., 179 Pa.Super. 155, 115 A.2d 837 (1955); Vacuum Con. Corp. of America v. Berlanti Const. Co., 206 Pa.Super. 548, 556–558, 214 A.2d 729 (1965); Hill & MacMillan v. Taylor, 304 Pa. 18, 155 A. 103, 75 A.L.R. 1022 (1931); McMeekin v. Gimbel Brothers, Inc., 223 F.Supp. 896 (W.D.Pa.1963).

In this case, the record leaves no doubt that the goods were required for the sole purpose stated above: to contain the liquor bottles. The acetate band merely went around the package. Defendant argues, however, that an additional "purpose" of the goods was that they be packed in shipping cases and that since plaintiff knew of this "purpose," defendant relied on the fact of plaintiff's knowledge. This contention is without merit. It was not the *purpose* of the holiday box or the acetate band which surrounded it to be of such dimensions, material, and character that it would fit nicely into re-shipping cells; this was merely a step in the production process.

We may assume that plaintiff knew that the packages would be placed in cases for shipment. We may assume that plaintiff realized that if the packages did not fit into the cases, some difficulty would result. But plaintiff did not know the size of the cases, and even if it did know, it was never asked or expected to conform its packages to such size and form as would, in the judgment of plaintiff, fit the shipping cells. Thus, the crucial element of reliance is lacking.

■■ It was the responsibility of the defendant and not of the plaintiff to co-ordinate the holiday package design with the shipping case. Pennsylvania courts have with rare unanimity held that where a specific item is ordered and that item as delivered fits the description called for by the buyer, there is no breach of warranty when the contemplated use of

the goods proves inappropriate to their inherent capabilities and design. Vacuum Con. Corp. of America v. Berlanti Const. Co., supra; Hill & MacMillan v. Taylor, supra. Surely, there can be no justifiable reliance where the supplier is given neither the information nor specific responsibility to perform the task of coordinating its product with the production process.

Defendant argues that we should have let the jury decide whether the acetate bands were defective because of some breach on the part of plaintiff. But the record is unequivocal on the point that the bands "worked" perfectly well until the boxes were thrust into the shipping cells, at which point they ripped. A jury could not have found anything other than that the cells were too small for the packages, and that the bands tore because they were snagged by the shipping cells. There is simply no evidence that the bands were defective. They did not break in midair while they were being lowered into the cases; they broke only when they came in direct contact with the inadequate shipping cases which plaintiff did not manufacture and of whose dimensions plaintiff had no idea.

Thus, the evidence could on no reading disclose a breach of implied warranty of fitness for a particular purpose. So far as plaintiff was concerned, the purpose of the boxes was to package liquor bottles attractively. The acetate band served the utilitarian purpose of giving notice required by law on the front of the package. It was supposed to be easily removable by the ultimate purchaser, and it was. It conformed exactly to the specifications of defendant and was in no way deficient in materials or workmanship. The *only* explanation in the evidence for what happened is that the shipping cases, ordinarily adequate for year-round liquor packaging, were too small for the elegant holiday boxes approved, ordered and received by defendant. Plaintiff had no way of knowing about this dilemma, and even if it knew, it was none of its concern since there was no manifestation on its part that it would

undertake to reconcile possible inconsistencies in defendant's own production process.

Thus, the verdict for plaintiff was properly directed and the defendant's motion for a new trial is denied.

It is so ordered.