534 P.2d 466

**CONSOLIDATED SUPPLY COMPANY, Plaintiff-Respondent,**

v.

**Loyale BABBITT, d/b/a Babbitt Electric & Refrigeration Co., and United States Fidelity and Guaranty Co., Defendants-Appellants.**

**No. 11397.**

Supreme Court of Idaho.

April 16, 1975.

E. W. Pike, Albaugh, Smith & Pike, Idaho Falls, for defendants-appellants.

Scott W. Reed, Coeur d'Alene, for plaintiff-respondent.

McQUADE, Chief Justice.

This action is for the purchase price of goods, minus credits, supplied by the plaintiff-respondent to defendant-appellant Babbitt. We affirm the judgment of the district court which granted relief to plaintiff-respondent.

Respondent Consolidated Supply Company, a wholesaler to contractors, brought this action against appellants Loyale Babbitt, a mechanical contractor, and United States Fidelity and Guaranty Company, Babbitt's surety on a public works contract bond. It sought to collect the purchase price, minus credits, on floor drain grating

supplied to Babbitt during the construction of a swimming pool complex at the University of Idaho. Consolidated also asked for attorney's fees and interest. The appellants answered that the grating was defective and not in accord with the architect's specifications. Appellants further alleged that Consolidated had failed to make a timely claim under the bond. Consolidated replied that any defects in the grating could have been remedied, but that Babbitt had refused to allow correction.

The grating had been intended to cover a drain extending the length of a walkway between the complex's two swimming pools. The grates and frames were specially made by respondent wholesaler's manufacturer after a representative of the manufacturer had reviewed the architect's specifications and gained consent from the architect for alternate, but equivalent, goods. The grates and frames were delivered to the construction site in late January 1970. In June 1970, the grates and frames were removed from their packing cases in preparation for installation in the drain gutter. Defects were discovered. The degree of defectiveness is controverted, but the record shows that horizontal and vertical alignment problems existed. Appellants list the defects as sharp edges, uneven surfaces, large gaps between the grates and frames and an unsatisfactory finish on the grating. They maintain the grating would have been a safety hazard for barefoot swimmers.

After discovery of the defects by Babbitt's employees, Consolidated and the manufacturer's representative were contacted, and they agreed to make an inspection of the imperfections on June 25, 1970. On June 24th, representatives of the architect examined the frames and grates and ordered Babbitt to reject them. A different system for drainage was designed. The next day, the manufacturer's representative visited the job site and offered to make corrections. Babbitt's foreman advised the representative of the earlier rejection by the architect. The goods were returned to Consolidated's manufacturer. Babbitt was allowed a credit of $2,000.00, less $194.88 freight, on the returned grating, originally priced at $5,634.44.

The district court found that the grating did not materially vary from the architect's specifications and that, as a specially manufactured item, it substantially conformed to Babbitt's order with respondent.[1] The trial court found that Babbitt had been given notice of Consolidated's claim when the materials were rejected and on frequent occasions thereafter, so that timely notice had been given under the bond to join Babbitt's surety, United States Fidelity, as a party to this action.[2]

Appellants' ten assignments of error can be summarized into three main issues. The first deals with the trial court's finding that the floor drain grating was a specially manufactured item which did not materially vary from the architect's specifications. On that basis, the court below concluded the grating conformed substantially to Babbitt's order and its rejection could not be justified on the basis of failure to meet specifications. The second question is, did Consolidated make a timely filing of its claim against Babbitt's surety, United States Fidelity and Guaranty Company? Finally, appellant Babbitt seeks reimbursement for his expenses in returning the grating to the manufacturer.

█ Appellants claim the evidence is contrary to the trial court's holding that the drains and grates did not vary in any material respect from the architect's specifications. They argue the evidence clearly

1. "This (sic) is no evidence in the record to show that the drains did not conform to the Zarn or equal specifications. There are inferences that, perhaps, they did not, in that the architect rejected them, but there is no evidence that the rejection was due to failure to equal specifications . . . . In view

of Yarno v. Village of Weippe [City of Weippe v. Yarno, 94 Idaho 257, 486 P.2d 268 (1971)], the suit was timely." "Memorandum Opinion."

2. Appellants argue respondent's claim of lien was filed on February 18, 1971. See *supra* n. 1.

demonstrated that the grating failed to conform to specifications, was not of merchantable quality, and was not fit for the particular purpose for which the vendor knew the grating would be used: Therefore, they maintain the grating was rightfully rejected.

In reviewing the record, we find agreement that some defects were present in the grating; but, the degree of defectiveness is in dispute. The trial court found the goods substantially conformed to Babbitt's order. Furthermore, respondent Consolidated Supply seasonably offered to correct any defects in the grating which impaired the grating's value to Babbitt. Substantial competent, although conflicting, evidence exists in the record, as demonstrated by the testimony of respondent's witnesses Stainbrook, Burr and Bartness, to support the trial court's finding that the floor drain grating substantially conformed to the specifications. That finding will not be disturbed on appeal. Ellis v. Jones.[3]

Appellants also claim that the goods were not of merchantable quality and were not fit for the purpose for which the seller knew the goods would be used, i. e., floor drain grating in a swimming pool area. They argue Consolidated Supply therefore breached the implied warranties of merchantability[4] and fitness for the particular purpose[5] in supplying these goods to Babbitt. The facts do not support this contention.[6]

Where the dispute concerns an alleged breach of an implied warranty, the burden is on the buyer to prove that the breach did in fact occur.[7] Goods to be merchantable, must be fit for the ordinary purposes for which such goods are to be used.[8] The trial court found the record contained no evidence showing " . . . that the drains did not conform to the Zarn or equal specifications. . . ." In light of the trial court's holding, we conclude the grating was merchantable under the Code.[9] Appellants argue the grating also breached the implied warranty of fitness for a particular purpose. Where as here a specially manufactured item is ordered, and the item as delivered fits the description called for by the buyer, there is no implied warranty of fitness for a particular purpose.[10] Since we have determined that Babbitt wrongfully returned the grating, we find Babbitt liable for the purchase price, minus credits, on his order for these specially manufactured goods.[11]

Appellants argue the trial court erred in finding that Babbitt had been given a credit of $2,000.00, less freight costs, as a result of negotiation, and that there remained a balance owed by Babbitt to respondent. The trial court had adequate evidence from the record to conclude that a credit of $2,000.00 less freight had been allowed.[12] We have already determined appellant Babbitt is liable on the balance owed for his ineffective repudiation of the order.

3. 96 Idaho 90, 524 P.2d 1062 (1974). *See* Enders v. Wesley W. Hubbard and Sons, Inc., 95 Idaho 590, 513 P.2d 992 (1973).

4. I.C. § 28–2–314.

5. I.C. § 28–2–315.

6. The merits of this argument is discussed, but we note that the issue of breach of warranty was not raised in the pleadings and appellants did not object to the trial court's failure to make findings with respect to alleged breaches of implied warranties or conclusions of law regarding that issue. *See* Church v. Roemer, 94 Idaho 782, 498 P.2d 1255 (1972).

7. Standard Packing Corp. v. Continental Distilling Corp., 259 F.Supp. 919 (E.D.Pa.1966); I.C. § 28–2–607.

8. Standard Packing Corp. v. Continental Distilling Corp., *supra* n. 7. *See* I.C. § 28–2–314; Robinson v. Williamson Idaho Equipment Co., 94 Idaho 819, 498 P.2d 1292 (1972).

9. *See* Standard Packing Corp. v. Continental Distilling Corp., *supra* n. 7.

10. *Id. But cf.* Robinson v. Williamson Idaho Equipment Co., *supra* n. 8. Fossum v. Timber Structures, Inc., 54 Wash.2d 317, 341 P.2d 157 (1959).

11. *See* I.C. § 28–2–703.

12. Ellis v. Jones, *supra* n. 3.

The second major issue is whether Consolidated Supply can bring this action on the contract payment bond executed between appellants Babbitt and United States Fidelity and Guaranty Company (U.S.F. & G.) and the Regents of the University of Idaho in accord with the Public Contracts Bond Act of 1965.[13] If so, the trial court correctly found U.S.F & G. liable on this claim as Babbitt's surety and properly awarded attorney's fees to respondent.[14]

■ Babbitt furnished the payment bond to the University as required by the act and was considered by both the relevant statute [15] and the contract bond as a "contractor." Under the act, claimants such as Consolidated Supply who have furnished materials to the "contractor" and who have not been paid in full within 90 days after the last of the materials were furnished by him, may sue upon the payment bond for the amount owing at the time of institution of the action.[16] Since Consolidated Supply had a direct contractual relationship with Babbitt, that portion of I.C. § 54–1927 which requires a written notice of claim by a subcontractor to the contractor within 90 days after the date the last of the materials were supplied is inapplicable.

■ I.C. § 54–1927 also limits the time within which the action may be brought on the bond: (a) to one year after the date the claimant supplied the last of the materials for which the action is brought; or (b) alternatively, to one year from the date the final payment under a subcontract became due, if the claimant is a subcontractor of the contractor. Normally, therefore, since this action was filed in May 1971, more

13. I.C. § 54–1925 et seq., repealing I.C. § 45–502 and I.C. § 45–503.

14. I.C. § 54–1929; City of Weippe v. Yarno, 94 Idaho 257, 486 P.2d 268 (1971).

15. I.C. § 54–1926: "Before any contract for the construction, alteration or repair of any public building or public work or improvement of (the State of Idaho or any of its political subdivisions) . . . is awarded to any person, he shall furnish to (the State of Idaho or any such political subdivision), . . . bonds which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':
\* \* \* \* \* \* \*
(2) A payment bond . . . solely for the protection of persons supplying labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract."

16. I.C. § 54–1927: "*Claims for labor or material furnished—Suit on contractor's payment bond—Procedure—Limitation.*—Every claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under this act, and who has not been paid in full thereof before the expiration of a period of ninety (90) days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute such action to final judgment for the sum or sums justly due him and have execution thereon; *provided, however, that any such claimant having a direct contractual relationship with a subcontractor of the contractor furnishing such payment bond but no contractual relationship expressed or implied with such contractor shall not have a right of action upon such payment bond unless he has given written notice to such contractor within ninety (90) days from the date on which such claim is made,* stating with substantial accuracy the amount claimed and the name of the person to whom the material was furnished or supplied or for whom the labor was done or performed. Each notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business or at his residence.
\* \* \* \* \* \* \*
Every suit instituted on the aforesaid payment bond shall be brought in appropriate court in any county in which the contract was to be performed and not elsewhere; *provided, however, that no such suit shall be commenced after the expiration of one (1) year from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material, for which such suit is brought, except, that if the claimant is a subcontractor of the contractor, no such suit shall be commenced after the expiration of one (1) year from the date on which final payment under the subcontract became due.*" (Emphasis added.)

than one year after the grating was shipped to Babbitt, it would be barred.

In the instant case, however, the contract bond between Babbitt and United States Fidelity and Guaranty specified that: "No suit or action may be maintained under the bond unless it shall have been instituted within two years from the date on which final payment under the contract falls due." In City of Weippe v. Yarno [17] this Court held that an analogous provision in another payment bond contract was sufficient to extend the time limit beyond that found in statute to that limit contracted for by the parties. *Weippe* held:

"It is our opinion that the contractual provision is to be given effect rather than statute. It is established law in Idaho that statutes of limitation may not be contractually shortened by the parties. It does not follow however, either logically or in the law, that statutes of limitation may not be contractually lengthened by the parties. * * * [W]here the parties agree to lengthen the statutory period within which suit can be instituted, the law will not interfere and shorten the period.

Contracts stipulating a limited time within which action may be brought have been upheld even though the period fixed is at variance with the statutory limitations, provided that the period fixed by contract is not so unreasonable as to show imposition or undue advantage in some way. The reasonableness of the stipulation depends not only on the words of the contract, but also on the facts of the particular case. In accordance with the foregoing general principles the courts have held that parties may by agreement lengthen the periods of limitation." 94 Idaho 258–59, 486 P.2d 269–70.

The provision in the contract bond between appellants and the University reasonably extended the time limit to two years for suits brought under the bond. Consolidated Supply's action was timely.

 Appellant Babbitt finally contends he is entitled to reimbursement from Consolidated Supply for his expenses incurred in returning the floor drain grating to the manufacturer. We disagree. We have decided his repudiation of the goods was not effective. Babbitt is not entitled to reimbursement for expenses flowing from that invalid repudiation.[18]

The judgment of the district court is affirmed. Costs to respondent.

Attorney fees on appeal in the sum of $2,000.00 are hereby awarded respondent.

McFADDEN, DONALDSON, SHEPARD and BAKES, JJ., concur.

17. 94 Idaho 257, 486 P.2d 268 (1971).

18. See I.C. § 28-2-715.